[No. 4105.   Decided May 2, 1902.]

THE STATE OF WASHINGTON *on the relation of Attorney General, Appellant,* v. SEATTLE GAS & ELECTRIC COMPANY, *Respondent.*

QUO WARRANTO — PLEADING — SUFFICIENCY OF CAUSE OF ACTION — OBJECTION ON APPEAL.

In an action in the name of the state on the relation of the attorney general demanding by what warrant defendant claims to enjoy certain franchises, an answer that it is no concern of the state nor of its attorney general is, in effect, a demurrer on the ground that the complaint fails to state facts constituting a cause of action, and, under Bal. Code, § 4911, such objection can be urged in the supreme court, though no ruling thereon was had in the superior court.

SAME — CONSTRUCTION OF STATUTE.

Under the rule requiring remedial statutes to be liberally construed, the word "person" should be construed as including a corporation, and "public franchise" as including the exercise of the right to open and use city streets for laying gas pipes, in that provision of Bal. Code, § 5780, subd. 1, which authorizes informations in the nature of *quo warranto* to be filed "when any person shall usurp, intrude into, or unlawfully hold or exercise any public office or franchise within the state." (ANDERS, J., dissents.)

SAME — WRONGFUL EXERCISE OF FRANCHISES — PROCEEDINGS BY ATTORNEY GENERAL — WHEN PROSECUTING ATTORNEY PROPER RELATOR.

There being no statutory provision empowering the attorney general on his own motion to inquire by *quo warranto* into the wrongful exercise of public franchises by a corporation, and the prosecuting attorney being expressly authorized so to do, under

Bal. Code, § 5781, which provides that "The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he, shall deem it his duty to do so, or shall be directed by the court or other competent authority," the attorney general has no authority, even under the common-law powers, if any, inhering in his office, to institute such an action. (REAVIS, C. J., and FULLERTON, J., dissent.)

SAME — PROCEEDING IN BEHALF OF CITY — NECESSARY AVERMENTS.

Cities of the first class being empowered by Bal. Code, § 739, to regulate and control the streets and alleys therein, and given power to provide for lighting the streets and all public places by gas or other lights, an information in the nature of *quo warranto* against a corporation, to prevent its laying gas pipes in the streets of a city, does not state facts sufficient when it fails to affirmatively show either that the information was filed at the request and on behalf of the city, or that the city authorities were not discharging the duty imposed upon them by law in properly controlling the use of the streets. (REAVIS, C. J., and FULLERTON, J., dissent).

SAME — WAIVER — WHEN DOES NOT AVAIL PLAINTIFF.

The fact that defendant had waived the objection that an action was improperly brought in the name of the attorney general instead of that of the prosecuting attorney could not be urged by the attorney general, when by statute the authority to bring the action was expressly vested in the prosecuting attorney.

SAME — DISMISSAL ON MERITS.

A decree dismissing on the merits an information in the nature of *quo warranto* is proper where it is essential to the cause of action that the suit be brought or authorized by the officer charged by law with the duty of instituting the suit, and it was in fact brought by another officer on his own motion.

Appeal from Superior Court, King County.—HON. WILLIAM R. BELL, Judge. Reversed.

*W. B. Stratton,* Attorney General, *C. C. Dalton* and *E. W. Ross (James Hamilton Lewis* and *Victor E. Palmer,* of counsel), for appellant.

*Burke, Shepard & McGilvra, E. C. Hughes* and *Will H. Thompson,* for respondent.

The opinion of the court was delivered by

WHITE, J.—The proceedings in this action are on information in the nature of *quo warranto,* instituted December 17, 1900, in the superior court of the state of Washington for King county, by Patrick H. Winston, as attorney general of the state, who sues, for the state and in its behalf, on his own motion, the defendant, who is alleged to be a corporation organized and existing under the laws of the state of Washington. The information alleges that for two years last past and upwards, at the city of Seattle, the said defendant has used, and still uses, without any warrant, grant, or charter, liberties, privileges, and franchises as follows: That of having and exercising the right to open and use the streets, lanes, alleys, commons, and public places of the city of Seattle for the introduction of gas pipes and other apparatus for gas, for the purpose of conveying illuminating and fuel gas to the said city and the inhabitants thereof; that said liberties, privileges, and franchises the defendant claims to have and use in perpetuity, and has during all the time aforesaid usurped, and still does usurp, upon the state of Washington, to its great damage and prejudice. The prayer is for judgment of the court in the premises and due process of law against the defendant to answer the state of Washington by what warrant it claims to have used and enjoyed the liberties, privileges and franchises aforesaid, and failing therein, that the defendant be forever enjoined from usurping the same to the injury of the state, or at all. The answer is voluminous. In it the respondent claimed the right to do the things complained of under authority and grants from the city of Seattle, and the ordinances, grants, etc., under which this right is claimed are set forth and referred to. The sixteenth paragraph of the answer was as follows:

"This defendant, further answering said information, alleges and charges that the matters therein set forth and complained of are not, nor is any one of said matters, the concern of the state of Washington, nor is said state or its attorney general in any wise interested in said matters, or any thereof, and that all said matters, and the subject-matter of said information, are matters in difference only between said city of Seattle and this defendant, and in which said city of Seattle solely is concerned or interested adversely to this defendant."

A reply to this answer was filed by the attorney general, substantially denying the rights claimed by the respondent and replying to the sixteenth paragraph as follows:

"And, replying to paragraph 16, of the said answer hereinabove referred to, complainant demurs thereto for the reason that the allegations therein contained are conclusions of law, not supported by facts therein pleaded sufficient to constitute a defense."

A supplemental answer was also filed, setting up a certain decree in the circuit court of the United States as *res judicata*. A demurrer to the supplemental answer was overruled. An agreed statement of facts was filed, and on this statement the court entered judgment. No formal demurrer was filed to the information. There are no findings of fact or conclusions of law by the court; further than the judgment, which is upon the merits and not that the action abate.

The sixteenth paragraph of the answer, while no doubt intended for a plea in the nature of a plea in abatement, is in effect a demurrer to the information on the ground that it does not state facts sufficient to constitute a cause of action; and, while there was no formal ruling in the court below on this matter either as a plea or demurrer, it is urged before us by the respondent: (1) That an information in the nature of *quo warranto* does not lie under

§ 5780, Bal. Code, to try the validity of a municipal franchise such as the respondent is alleged to be usurping; (2) that this action cannot be prosecuted on relation of the attorney general; (3) that, if it can be prosecuted on information, the city of Seattle must cause the suit to be instituted, as it is the party solely concerned or interested adversely to the respondent.   Our Code provides:

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting always the objection that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of the proceedings, either in the superior or supreme court."   Bal. Code, § 4911.

Under this section, we think the respondent has the right to urge the objections mentioned.

The statutory proceeding in this state by information in the nature of *quo warranto* is a substitute both for the common-law writ and for the proceeding by information in civil causes engrafted upon it by acts of parliament. *Mills v. State ex rel. Smith,* 2 Wash. 566 (27 Pac. 560.)

The statute provides in what cases informations may be filed.   § 5780, Bal. Code.   Of the five classes mentioned in this section, those specified in subdivisions 2, 3, and 4 manifestly do not include the case at bar.   The language of subdivisions 1 and 5 is as follows:

"(1)   When any person shall usurp, intrude into, or unlawfully hold or exercise any public office or franchise within the state, or any office in any corporation created by the authority of the state.    .    .    .    (5)   Or where any corporation do or omit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or where they exercise powers not conferred by law."

This is a remedial statute, and it must be liberally construed. "The rule in construing remedial statutes, though it may be in derogation of the common law, is that everything is to be done in advancement of the remedy that can be done consistently with any fair construction that can be put upon it." *Chicago, B. & Q. R. R. Co. v. Dunn,* 52 Ill. 260 (4 Am. Rep. 606). The word "person," as used in subdivision 1 of the section, under this rule, we think, must be construed to include a corporation; and the words "public franchise," as there used, must be construed to include the rights and privileges which the information charges are being usurped by the respondent. Where it is insisted that the sovereignty of the state in the use of a public franchise is being invaded, it is essential, before passing upon the rights claimed by respondent in its answer, to determine whether the state will be bound by the judgment. If the action is waged, not under the authority of the officers of the state charged by the constitution and statutes of the state with the duty of instituting the action, then the action cannot be said to be binding upon the state, no matter if the decision is adverse to the claims of the state or supports the contention of the one instituting the suit. No suit should be tolerated that is not determinative of the question raised by the pleadings. The history of this class of litigation shows that the remedy sought has been abused, and used for the gratification of personal malice or other improper ends. *Mills v. State ex rel. Smith, supra.* The case at bar is prosecuted by both the attorney general and private counsel. While the action is in the name of the state, on the relation of the attorney general, it is apparent that private, and not public, interest has had something to do with setting the machinery of the court in motion. The inquiry, then, becomes important, in view of this fact, as to

the power of the attorney general to institute this action. We must also take into consideration that the city of Seattle has control over its own streets, alleys, and public places, and can by the exercise of its police power prevent the alleged unauthorized use of its streets. If that be ineffective, the city can by suit enjoin the private corporation from assuming to exercise the disputed franchise. The remedy by *quo warranto* is an extraordinary one, which the law does not offer with a liberal hand for the redress of private or local grievances.

The next inquiry, therefore, is, has the information been filed by the person qualified by law to act as relator? If not, the court is not clothed with power to pronounce judgment thereon, any more than it would have a right to pronounce judgment in a criminal action upon an information filed by a private attorney, when the law required the same to be filed by the prosecuting attorney. *State v. Heaton*, 21 Wash. 59 (56 Pac. 843). In the case just cited we held:

"The duties of the prosecuting attorney are prescribed by statute. His office is defined, and his authority comes from the same source of power as does that of the court, and the functions of each are prescribed by law."

And we quoted with approval Judge COOLEY, in *People v. Bemis*, 51 Mich. 422 (16 N. W. 794), where he said:

"We have held that the office of prosecuting attorney was *quasi* judicial, and that he and any one associated with him must be exclusively the representative of public justice, and stand indifferent as between the accused party and any private interest."

Section 5781, Bal. Code, immediately following the section defining the cases in which an information in the nature of *quo warranto* may be filed, is as follows:

"The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

Here we have an express statute conferring the power sought to be exercised by the attorney general in this case on another officer, created by the same power that created the office of attorney general.

The appellant assumes that the attorney general of this state, by virtue of his office, is, like the attorney general of England, clothed with common-law power to institute this suit, as it was the duty of the attorney general under the common law to represent the crown in such actions as this, and that therefore the attorney general of this state on his own motion can institute this suit. Political power in this state inheres in the people, and by constitutional or statutory authority the exercise of this power in behalf of the people is delegated to certain officers. In the exercise of power the officer is controlled by the law theretofore declared. The attorney general of the state, although bearing the same title as the attorney general of England, is not a common-law officer. There is nothing in a mere name. Because the particular office filled by the relator is called the office of "attorney general," it does not follow therefrom that he has the same powers as the attorney general of England under the common law. Every office under our system of government, from the governor down, is one of delegated powers.

"It is a well-settled doctrine that officers of the state exercise but delegated power, and this is particularly true of the attorney general. His office is created by statute,

and he, as such officer, can only exercise such power as is delegated to him by statute." *Julian v. State,* 122 Ind. 68, 72 (23 N. E. 691).

It is true that the office of attorney general of this state is created by the constitution; but the principles announced in the Indiana case are none the less applicable. The constitution and statutes of this state define his power. To the constitution, therefore, and the laws enacted in pursuance thereof, we must look for these powers, and not to the common law. The use of the term "attorney general," as used in the constitution, must be interpreted in the light of the laws of the territory in existence at the time the constitution was adopted. *Board v. Peterson,* 4 Wash. 147, 154 (29 Pac. 995); *Winsor v. Bridges,* 24 Wash. 540, 544 (64 Pac. 780); *Peterson v. Dillon,* 27 Wash. 78 (67 Pac. 397, 399).

The territorial legislature in 1888 created the office of attorney general and expressly defined his duties as follows:

"The duties of the attorney general shall be: (1) To appear for and represent the people of the territory before the supreme court in all cases in which the territory or the people of the territory are interested. (2) To institute and prosecute all actions and proceedings in favor of, or for the use of, the territory, which may be necessary in the execution of the duties of any territorial officer. (3) To defend all actions and proceedings against any territorial officer, in his official capacity, in any of the courts of this territory or the United States. (4) To consult and advise the several district prosecuting attorneys in matters relating to the duties of their office; and when in his judgment the interest of the people of the territory require it, he shall attend the trial of any party accused of crime and assist in the prosecution. (5) To consult with and advise the governor and other territorial officers, and give, when requested, written opinions upon all legal or constitutional

questions relating to the duties of such officers respectively. (6)   To prepare, when necessary, proper drafts for contracts and other writings relating to subjects in which the territory is interested.   (7)   To give written opinions, when requested by either branch of the legislative assembly or committees thereof, upon constitutional or legal questions.   (8)   To enforce the proper application of funds appropriated to the public institutions of the territory and to prosecute corporations for failure or refusal to make the reports required by law.   (9)   To keep in proper books a register of all cases prosecuted or defended by him, in behalf of the territory or its officers, and of all proceedings had in relation thereto, and to deliver the same to his successor in office.   (10)   To keep in his office a book in which he shall record all the official opinions given by him during his term of office, which book shall be by him delivered to his successor in office.   (11)   To pay into the territorial treasury all moneys received by him for the use of the territory.   (12)   To attend to and perform any other duties which may, from time to time, be required of him by law."   Laws 1887-88, p. 8 (Bal. Code, §§ 169, 4753).

This law was in force when the constitution was adopted, and by an express provision of the constitution the laws not inconsistent therewith were continued.   As was said in the case of *Board v. Peterson, supra,* and reaffirmed in *Winsor v. Bridges* and *Peterson v. Dillon, supra,* the use of terms in the constitution must be interpreted in the light of legislation existing at the time.   To the statute of 1888, and to the constitution and the statutes passed in conformity therewith, we must look for the powers and limitations thereon of the attorney general of this state, and not to the common law of England.

Section 1, art. 3, of the constitution is as follows:

"The executive department shall consist of a governor, lieutenant governor, secretary of state, treasurer, auditor,

32—28 WASH.

attorney general, superintendent of public instruction and a commissioner of public lands, who shall be severally chosen by the qualified electors of the state at the same time and place of voting as for the members of the legislature."

Section 2, art. 3, is as follows:

"The supreme executive power of this state shall be vested in a governor, who shall hold his office for a term of four years, and until his successor is elected and qualified."

Section 5, art. 3, is as follows:

"The governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed."

Section 21, art. 3, is as follows:

"The attorney-general shall be the legal adviser of the state officers, and shall perform such other duties as may be prescribed by law.    .    .    ."

Section 5, art. 11, is as follows:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office.    .    .    ."

Section 2, art. 27, is as follows:

"All laws now in force in the territory of Washington which are not repugnant to this constitution shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature.    .    .    ."

Section 6, art. 27, is as follows:

"All officers now holding their office under the authority of the United States, or of the territory of Washington,

shall continue to hold and exercise their respective offices until they shall be superseded by the authority of the state."

While the attorney general by § 1, art. 3, is declared to be a part of the executive department of the state government, by § 2, art. 3, the governor is declared to be the supreme executive power, and § 5, art. 3, declares that the governor shall see that the laws are faithfully executed, and § 21, art. 3, while making the attorney general the legal adviser of the governor, as well as other state officers, declares that he shall perform such other duties as may be prescribed by law. The statutes of the state further provide that the governor, in addition to the duties prescribed by the constitution, has power to ".     .     . require the attorney general or any prosecuting attorney to inquire into the affairs or management of any corporation existing under the laws of this state, or doing business in this state, and report the same to him, or to any grand jury designated by him, or to the legislature when next in session. He may require the attorney general to aid any prosecuting attorney in the discharge of his duties." § 100, Bal. Code. Nowhere is there any express provision of the law authorizing the attorney general to institute the suit in question. The constitution provides for the creation of the office of prosecuting attorney, and this officer is as much a constitutional officer as the attorney general. The powers exercised by the attorney general of England as an officer of the king under the common law, including both his power to prosecute for infractions of the criminal law and his power to sue out as relator prerogative writs to prevent unauthorized encroachments upon the power of the sovereign, have been distributed by the written law of the state; part

of these powers being assigned to the attorney general, and part to the prosecuting attorney. The powers of both are created and limited, not by the common law, but by the law enacted· by the people, either in their constitutional declarations or through legislative declarations in pursuance of constitutional provisions. The law defining the duties of prosecuting attorneys relative to suits of the character in question was in force when the constitution was adopted, continued in force by the operation of the constitution, and was in force when this action was brought. There is no allegation in the complaint that the prosecuting attorney of King county was requested to bring this action and refused to do so, or that any request whatever was made of him, or that he had knowledge of the alleged violation of the law and neglected to act.

Section 4757, Bal. Code, is as follows:

"The prosecuting attorney of each county shall have authority, and it shall be his duty, subject to the supervisory control and direction of the attorney general, to appear for and represent the state, and the county of which he is prosecuting attorney, in all criminal and civil actions and proceedings in such county in which the state or such county is a party."

This section subjects the prosecuting attorney to the direction and supervisory control of the attorney general in bringing and maintaining actions, but makes it none the less the duty of the prosecuting attorney to appear and represent the state, notwithstanding the direction and supervisory control over him by the attorney general. This section, as it is a part of the same act, must also be read in connection with § 4754, Bal. Code, which is as follows:

"Prosecuting attorneys are attorneys authorized by law to appear for and represent the state and the counties

thereof in actions and proceedings before the courts and judicial officers."

. The statute having expressly. designated the prosecuting attorney as the officer authorized to file the information, either on his own motion whenever he shall deem it his duty so to do, or when directed by the court or other competent authority, we think he is the only officer who on his own motion can institute this proceeding.

"A statute, it has been said, is to be so construed, if possible, as to give sense and meaning to every part; and the maxim was never more applicable than when applied to the interpretation of a statute, that '*Expressio unius est exclusio alterius.*' The sages of the law, according to Plowden, have ever been guided in the construction of statutes by the intention of the legislature, which they have always taken according to the necessity of the matter, and according to that which is consonant to reason and sound discretion." Broom, Legal Maxims, p. *664.

The legislation of the state shows that the legislature has not considered that the attorney general is clothed with any other power than that conferred upon him by the constitution or by express legislative enactment. Where it has been deemed necessary for the attorney general to appear and represent the state, authority for that purpose has been given to him by express enactment. For instance, he is to advise and assist the fish commissioner, and furnish legal assistance to him in suits brought by that officer. § 3333, Bal. Code. He is to perform similar duties for the dairy commissioner. § 2858. He is to perform similar duties for the inspector and state grain commission. § 2892. He is to appear in contests in the United States land office, and represent the state, when directed by the commissioner of public lands (§ 2196); to appear for the state when lands are to be appropriated for the use of the state (§ 5616);

to appear for the state when civil actions are brought for claims against the state (§§ 5608, 5610); to appear in the supreme court in the prosecution of criminal cases for violation of the laws regulating the practice of dentistry (§ 3033); to prosecute proceedings, etc., against building associations when certain facts are brought to his attention by the state auditor (§ 4414); to prosecute on appeal for practicing medicine without a license (§ 3019). He shall appear for and represent the state before the supreme court in all cases in which the state is interested; institute and prosecute all actions and proceedings for or for the use of the state, which may be necessary in the execution of the duties of any state officer; defend all actions and proceedings against any state officer in his official capacity in any of the courts of this state or the United States, and consult and advise the several prosecuting attorneys in matters relating to the duties of their office; and when, in his judgment, the interests of the state require, he shall attend the trial of any person accused of a crime, and assist in the prosecution. § 4753, Bal. Code. Many other duties are imposed upon him by statute. If he is clothed with common-law power, why the necessity for special legislation in the instances cited? We held in *Mills v. State ex rel. Smith, supra,* touching *quo warranto,* that:

"The common law on that subject has been supplanted by the statute—the state has legislated on the subject—and it is to the statute we must look, not only for the practice of the court, but for the qualifications of the relator. . . . There is no discretion given to the court, and, if discretion should be given to the court, the discretion should not go beyond the statutes. The statutes specify those who have the legal right to invoke this remedy. If the relator has a standing

here, it must be under § 703," Code 1881 (§ 5781, Bal. Code).

In addition, our constitution makes the governor the supreme executive officer of the state, and directs that he shall see that the laws of the state are faithfully executed. Under this power the governor of the state, under § 5781, had full authority, and, if he believed the law of the state was being violated, it was his duty to direct the prosecuting attorney of King county to institute this action. The presumption of law is that public officers perform their duties. *Kimball v. School District,* 23 Wash. 520, 526 (63 Pac. 213). In order to overcome this presumption it was necessary to allege in the information facts showing why the information was not filed by the prosecuting attorney, when the law had expressly designated such officer as the one who should file the information. Cases may arise, not covered by statute, where the governor is called upon to institute suits to enforce the laws of the state, when the governor directs the attorney general to act for the state. In such cases it would perhaps be unnecessary to allege that the action was brought by the direction of the governor; for the presumption would be that it was by his direction, as the attorney general is the legal adviser of the governor. The case at bar, however, falls under a different rule; for here the officer who is to act in the particular class of cases under consideration has been selected by the legislature, and the law under which the selection is made has been continued in force by the constitution, as it is not inconsistent with the provisions of the constitution. The prosecuting attorney is near to the people, the source of all power. Upon him rests, in the first instance, the duty and responsibility for the institution of suits of this character. We think it well to leave that responsibility where the

law has placed it; for there then can be no shifting of duty. The information, under the laws of this state, is a plain statement of facts, like that in a complaint in any other cause of action; and the only difference between this proceeding and an ordinary civil action is the formal requirement that it be filed on the relation of some one. *State ex rel. Heilbron v. Van Brocklin*, 8 Wash. 557 (36 Pac. 495).

The information does not allege that the officers of the city of Seattle neglect to discharge their duties in regulating and controlling the streets, alleys, and other public places of the city, in the particular complained of, or that they collude with the respondent in violation of law, or that the information is filed at the request of the city of Seattle. The laws of this state, in force now and at the time this information was filed, give to cities of the first class, like the city of Seattle, the power to provide for lighting the streets and all public places, and for furnishing the inhabitants thereof with gas or other lights, or to authorize the erection and maintenance of such works as may be necessary and convenient therefor, and to regulate and control the use thereof, as well as the power to regulate and control the streets, alleys, and public ground of the city. § 739, Bal. Code. Under this power the city of Seattle has authority to act for itself, or to authorize persons or private corporations to light the streets of the city with gas and to furnish the inhabitants thereof with gas or other lights. *Atlantic City Waterworks Co. v. Atlantic City*, 48 N. J. Law, 378 (6 Atl. 24); *Newport v. Newport Light Co.*, 84 Ky. 166; *Columbus Water Works Co. v. Columbus*, 48 Kan. 99 (28 Pac. 1097, 15 L. R. A. 354). When a private corporation is authorized to so furnish gas and lights to the city and its inhabitants, an implied right in such private

corporation to a reasonable use of the streets to lay its pipes. under the control of the city exists. The policy of the state is to give to cities of the first class power to decide and control local and subordinate matters, such as the use of the streets of the city, not only as a highway, but for other proper municipal purposes. Says Dillon, in his work on Municipal Corporations:

"   . . .   The number and freedom of these local organizations, whereby political power is exercised by the citizens of the various local subdivisions of a state, who have a right to vote and to regulate their own domestic concerns, constitute a marked feature in our system of government. They are simply the administrative form of the fundamental American idea of government, viz., that the people are the source of all political power and have the right to exercise it. This is with us no mere rhetorical declamation, but a foundation principle upon which our political institutions rest. As local matters can better be regulated by the people of the locality than by the central power, we provide that each road district, each school district, each city, and each county shall, as to its local concerns, be self-governed. These organizations are, of course, subject to the legislature of the state, and their acts, if in violation of law or where they affect private rights, are also subject to judicial cognizance and judgment. They are under the law and are bound to obey it. The policy of creating local public and municipal corporations for the management of matters of local concern runs back to the earliest period of our colonial history, is exhibited in all our legislation, and expressly or impliedly guaranteed in our state constitutions.   .   .   "   Dillon, Municipal Corporations (4th ed.), § 9.

We have said that the presumption of law as to a public officer is that he does his duty. The same presumption prevails as to the officers of a city government, to whom is delegated by the state the power of controlling the

streets of the city.  It will not be presumed that they permit the use of the streets in violation of law.  In the first instance, they are charged with the duty of controlling the use of the streets; and, where an information is filed by a public prosecutor, it should affirmatively appear therefrom either that the information was filed at the request and on behalf of the city, or that the city authorities were not discharging the duty imposed upon them by law in properly controlling the use of the streets. As was said by the supreme court of Michigan in *People ex rel. Maybury v. Mutual Gaslight Co.,* 38 Mich. 154, 155, where leave was asked to file an information in the nature of *quo warranto* to deprive the respondent of a franchise of laying gas pipes and distributing gas through the streets of Detroit:

"In the present instance the state has shown by the incorporating act that public policy is not opposed to, and is in favor of, allowing gas companies to exist, as they only can exist by having power to lay their pipes.  The consent of the municipal corporation is required, because the terms on which streets may be safely allowed to be occupied for the purposes of laying gas pipes can be best determined by leaving the regulation to be harmonized with all other exigencies by the authorities controlling their use.  The law contemplates that permission will not be unreasonably refused or unreasonably burdened, but regards the municipality as competent to determine the proper conditions for itself."

Where a bill in equity was filed on behalf of the United States, by the district attorney of the United States, to set aside a patent for land, and it did not appear from the complaint that the attorney general had brought the suit, or that it had been brought under his authority, so that he might be made officially responsible therefor and bound thereby, it was held that the complaint did not

contain a statement of facts essential to the relief demanded. *United States v. Throckmorton*, 98 U. S. 61. We think the same principles govern in the case at bar.

If we treat the sixteenth paragraph of the complaint as a plea in abatement, the same result follows. Under our statute a plea in abatement and to the merits may be joined in the same answer and heard at the same time, and judgment rendered as the nature of the case demands, either abating the action or on the merits. Pomeroy, Code Remedies, § 698.

The judgment should have been that the action be dismissed. The judgment of the court below was on the merits. It is therefore reversed, and this action is remanded, with instructions to enter a judgment of dismissal.

MOUNT, HADLEY, and DUNBAR, JJ., concur.

ANDERS, J. (concurring in result).—I unhesitatingly assent to all that is said in the very exhaustive opinion herein written by Judge WHITE, except the assertion that the word "person," as used in subdivision 1, § 5780, Bal. Code, must be construed to include a corporation, and that the words "public franchise" must be construed to include the rights and privileges which the information charges are being usurped by the respondent. Inasmuch as subdivision 5 of said section specifically declares when an information may be filed against a corporation, it seems to me that the legislature intended to restrict the remedy against corporations to the particular cases therein mentioned, and that the word "person" in subdivision 1 was not intended to include a corporation; and I therefore concur in the result.

REAVIS, C. J. (dissenting).—I feel impelled to disagree with much of the reasoning and the conclusion of the ma-

jority in this cause. As stated in the opinion, it is an information in the nature of *quo warranto,* by the state, on the relation of the attorney general, showing that the defendant corporation is exercising rights and franchises in the city of Seattle without right or authority. The portion of the defendant's answer deemed material and decisive is the following:

"This defendant, further answering said information, alleges and charges that the matters therein set forth and complained of are not, nor is any one of said matters, the concern of the state of Washington, nor is said state or its attorney general in any wise interested in said matters, or any thereof, and that all said matters, and the subject-matter of the said information, are matters in difference only between said city of Seattle and this defendant, and in which said city of Seattle solely is concerned or interested adversely to this defendant."

The majority considers the above paragraph as having the effect before this court of a general demurrer to the information. I do not understand that such a general demurrer, if this can be so considered, properly raises the question of the legal capacity of the plaintiff to maintain the action. The substance of the paragraph is evidently directed against the right of the state to maintain this action. It is alleged that the state is not concerned. If I apprehend the nature of an information in *quo warranto,* the state is always concerned when any person attempts to exercise any public office or franchise within the state, or to claim any right or privilege under public authority. The origin of the information and the name of the writ indicate its essential purpose, and its continued recognition and use in legislative acts and the decisions of our courts make it the appropriate remedy for the unwarranted usurpation or exercise of any public fran-

chise, and the essential features of procedure seem to have been always simple and in substance the same in common-law courts. Such an information, when brought by the state or sovereign authority, questions the right of the person or corporation to exercise the franchise in question, and the answer always required from the respondent is the showing of its authority. I therefore think the issues were few and simply presented to the court in this cause. The information charged that defendant was exercising a public franchise in the city of Seattle, and that such franchise was without authority of law. It was, then, incumbent upon the defendant to show its right under the authority of the state. I say "of the state," because any franchise it might possess from the city of Seattle is under the paramount authority of the state. Thus, if it were shown that the franchise exercised by the defendant was properly granted by the city of Seattle, under delegated authority from the state, the justification would be complete. As I view it, there is no force in the suggestion that the city of Seattle may control its streets, alleys, and public places, and prevent any unauthorized use of its streets. This is beside the question, which is an inquiry into the alleged usurpation of rights and privileges which can be granted by the state alone, and with which usurpation the state is at any and all times concerned. It would seem, from the mention of the proceeding in the constitution without definition, that we must resort to the common law and authorities construing that law to understand its nature, and this is continually done. As an illustration, in *State ex rel. Mullen v. Doherty,* 16 Wash. 382 (47 Pac. 958, 58 Am. St. Rep. 39), we were required to determine the right to a jury trial in *quo warranto,* and very obviously referred to the common-law

rights of the parties in such proceedings when our con-
stitution was adopted.

I concur in the view that the statute may regulate the
procedure, and think it has directed it in this particular
case; but I do not think the legislature has said that it
was not within the duties of the attorney general, who is
constitutionally a part of the executive department, and
the chief law officer of the state, to use the name of the
state in a proceeding to inquire into the usurpation of
a public franchise. It is true, I may be impressed un-
duly by the almost unvarying customary duties imposed
on the attorney general under the distribution of powers
in systems similar to ours; but upon the same provisions
of the constitution and statutes mentioned in the opinion
of the majority I arrive at a different conclusion as to the
powers and duties of the attorney general. I think his
duties have not all been defined by statute. The governor
of the state is required to see that the laws are faithfully
executed. The attorney general is the authorized adviser
of the governor. I think he may surely, at the instance
of the governor, institute such or any proceedings that
may be required for the enforcement of the laws. It
would be difficult to have defined the specific procedure
which would include or cover all cases required, and I
do not think, as against a general objection, he should
be required to show the specific authority of the execu-
tive. I express no view upon the merits of the case, but
think this court should hear and determine the contro-
versy.

FULLERTON, J. (dissenting).—The conclusions reached
by the court, as I understand them, are (1) that the at-
torney general cannot, on his own relation, institute an
inquiry whether or not a corporation exercising a public

franchise has usurped its authority in so doing; and (2) when the alleged usurpation consists of the unlawful use of the streets of a city, the power to inquire therein rests with the prosecuting attorney of the county in which the city is situated, and that he must show, before an information therefor will be entertained that it was filed at the request of the city authorities, or that the city authorities were not properly discharging the duties imposed upon them by law in the control of the use of the streets. With neither of these conclusions can I agree. As to the first, I think the attorney general, as the chief law officer of the executive department of the state, has a right to institute any and all proceedings necessary to the enforcement of the laws of the state; and this under his common-law powers, when direct statutory authority therefor may not be found. As to the second, I think the people of the state at large have such an interest in the streets of a city as will enable them through the proper officer to enjoin their uses for unlawful purposes. While the inhabitants of a city may be more immediately concerned in the manner in which the streets of that city are used than are the people at large, still such streets are public highways, common to all the citizens of the state, and may not be usurped or obstructed for private gain without lawful authority. When, therefore, a corporation asserts a right to use a street of a city in a way inconsistent with its use as a highway, the attorney general, as the representative of the people of the state, may inquire by what authority it does so. The case should pass to a determination upon its merits.

## ON PETITION FOR REHEARING.

WHITE, J.—The opinion in this case is reported in 68 Pac. 946. The appellant petitions for a review as to the

common-law powers of the attorney general, and as to the proposition that the respondent has waived the right to object either to the form of the action or as to the capacity of the relator. We are satisfied with the views expressed in the original opinion as to the common-law powers of the attorney general. At least, in this class of cases the attorney general has no common-law powers, because the legislature has seen fit to confer the power or duty ordinarily exercised at common-law by the attorney general upon the prosecuting attorney of the county where the wrong is alleged to have been committed. Before preparing the opinion in this case we examined the case of *Hunt v. Chicago & Dummy Ry. Co.,* 20 Ill. App. 282, relied upon by the appellant. It is true, in discussing the constitution of Illinois and the statutes of that state, which did not undertake to confer the power or duty on any other officer, the court came to the conclusion that the attorney general of Illinois could exercise the power that the attorney general of England might exercise at common-law; but the court in its opinion said:

"There is nothing in our present constitution or *statutes* which necessitates, in our opinion, a construction which would exclude the attorney general from the exercise of common-law powers in addition to those conferred by the statute."

Further on the court says:

"It must be admitted that there is no statute imposing upon the attorney general the duty of instituting or becoming a party to any legal proceedings for the protection or preservation of funds held in trust for a public charity. Whence, then, arises such duty? Manifestly from the principles of the common law, which make the attorney general the proper representative of the people of the state in all courts of justice, and charge him with the official duty of interposing for the protection and preser-

vation of the rights of the public whenever those rights are invaded, *and there is no other adequate or available means of redress."*

The prosecuting attorney, by statutory enactment in this state, is a representative of the people of the state in all courts of justice, and is charged with the official duty of protecting the rights of the public.   Here the statute of the state, through the prosecuting attorney, furnishes an adequate and available means of redress, and, by imposing on the prosecuting attorney the duty sought to be exercised by the attorney general, necessitates a construction excluding the attorney general from instituting this action in the first instance.   The fact that the statute of the state had conferred the *power* and imposed the *duty* of exercising that power on the prosecuting attorney distinguishes this case from the case of *Hunt v. Chicago, etc. R. R. Co., supra.*   The state undoubtedly has the right to institute this action through the officer it has selected for that purpose.   If that officer were here insisting on a waiver, he would be heard.   As the officer who instituted this action was not authorized to institute it, logically it follows that he cannot insist upon a waiver any more than he can claim the right to institute the suit in the first instance.   In citing *United States v. Throckmorton,* 98 U. S. 61, we said:

"Where a bill in equity was filed on   behalf   of   the United States, by the district attorney   of   the   United States, to set aside a patent for land, and it did not appear from the *complaint* that the attorney general had brought the suit, or that it had been brought under his authority, so that he might be made officially responsible therefor and bound thereby, it was held that the *complaint* did not contain a statement of facts essential to the relief demanded."

33—28 WASH.

The criticism of the appellant on this part of the opinion is technically correct. We were in error in saying that the supreme court of the United States held the *complaint* insufficient. What the court did hold, however, in that case, was that it was *essential* that it should appear in some way in the *record* that the attorney general had brought the suit himself, or given authority to bring it, and, if that did not appear, the suit would be dismissed. That court said:

"It is *essential*, therefore, to such a suit, that without special regard to form, but in some way which the court can recognize, it should appear that the attorney general has brought it himself, or given such order for its institution as will make him officially responsible for it, and show his control of the cause."

That case was cited to sustain the proposition that it was *essential* to the cause of action that the suit be brought or authorized by the officer charged by law with the duty of instituting the suit, and in the absence of such showing, a decree dismissing the suit on the *merits* was right. It is not contended that there is anything in the record in this case showing that it was brought by the prosecuting attorney, or by his authority, or by the authority of any court, or by the authority of the governor of the state; and we think the principle announced in *United States v. Throckmorton* is applicable to the case at bar, and sustains the proposition that this action should be dismissed upon its merits, because it is not brought by the officer authorized by law to bring it.

The petition for a rehearing is denied.

DUNBAR, ANDERS, HADLEY and MOUNT, JJ., concur.