[No. 16274.   Department Two.   September 15, 1921.]

JOSEPH OSTANT *et al., Appellants,* v. PACIFIC GROCERY COMPANY, *Respondent.*[1]

MUNICIPAL CORPORATIONS (356, 370)—USE OF STREETS—OBSTRUC-
TIONS — RIGHTS OF ABUTTING OWNERS — INJUNCTION — DECREE.   An
owner of residence property is not entitled to an injunction against
the use of any part of the pavement in front of and abutting on his
property, by a small electric truck, with rubber tires, where the
pavement was not intended as a sidewalk, and the truck only made
infrequent trips and did not interfere with use by pedestrians.

SAME.   Where a railway company has constructed a common-user
spur-track in an alley with the consent of the city under the power
granted by Rem. Code, § 7507, subd. 9, a decree enjoining defendant
from using that part of the track opposite plaintiff's premises for
the storage of cars, and restraining defendant from allowing cars
being loaded from its warehouse to project in the rear of plaintiff's
premises longer than forty-eight hours, sufficiently protects the per-
sonal and property rights of plaintiff.

Appeal by plaintiffs from a judgment of the su-
perior court for Snohomish county, Brawley, J., en-
tered June 9, 1920, in favor of the plaintiffs, in an
action for an injunction, tried to the court.   Affirmed.

*A. Joseph Allen (James R. Chambers,* of counsel),
for appellants.

*Black & Black,* for respondent.

MITCHELL, J.—Joseph Ostant and wife are the own-
ers of real property fronting fifty feet on the east
side of Chestnut street, in the city of Everett, upon
which is situated an old store building, flush with the
street and occupied by them as a residence.   Their
property extends back one hundred and twenty feet to
an alley that parallels the street.   Adjoining their
property on the north is an alley, twenty-four feet

[1]Reported in 200 Pac. 1032.

wide, running east and west, and which is paved with concrete for a distance of one hundred and twenty-three feet from the street. The premises immediately south of the Ostant property, consisting of forty-five feet frontage on the street, are occupied by the Pacific Grocery Company as a warehouse and storage room used in connection with its wholesale grocery business. South of the warehouse the property is open and un-platted and is a part of the terminal grounds of the Northern Pacific Railway Company. On the same side of Chestnut street, north of the Ostant property and separated from it by the twenty-four foot alley, the property, fronting about one hundred and twenty-five feet on Chestnut street and reaching to the intersection with Hewitt avenue, is occupied by the Pacific Grocery Company for its sales rooms. The east fourteen feet of Chestnut street is paved with concrete, the surface of which is practically even with other portions of the street, including a wood block pavement located along the center of the street.

In the north and south alley at the rear, a spur railroad track has been constructed from the Northern Pacific Railway Company yards which is used by the Pacific Grocery Company in its rail shipments. The spur track crosses the twenty-four foot alley at grade and extends northerly only to a point near the center of the east line of the grocery company's sales room property. Paralleling this spur track and within forty feet east of it, there is, and for a great number of years has been, another railroad spur not altogether on public property and extending considerably further north to facilitate the shipments of other business concerns. The territory south of Hewitt avenue and east of Chestnut street is devoted almost exclusively to wholesale, manufacturing and railroad purposes. With the exception of the second story of an-

other building, the Ostant property is the only residence in the district. Considerable of the merchandise carried from the warehouse to the sales rooms of the grocery company is handled by hand trucks and one electric power truck, operated by the grocery company along the fourteen-foot pavement on the east side of Chestnut street, while the rail shipments are handled direct with the cars that for convenience are spotted on the railroad spur alongside the warehouse and sales rooms.

About the time of commencing the construction of the railroad spur and only a few months after the grocery company commenced the occupancy of its premises, Mr. and Mrs. Ostant, conceiving the idea that their property rights were being invaded, brought this action against only the Pacific Grocery Company to enjoin the use of its hand trucks and the electric truck, or any other kind of vehicle, on the concrete paving on Chestnut street, and to prevent the operation and maintenance of the railroad spur in the alley in the rear of their property. After the issues were made up a trial was had. The judgment entered provides as follows:

"It is ordered, adjudged and decreed that the defendant be and it is hereby, restrained and enjoined from using the Northern Pacific Railway Company spur in that part of the alley immediately east of the plaintiffs' premises for the purpose of storing cars, defendant being permitted, however, to load and unload cars at either door of its warehouse and to use said spur for the purpose of moving cars to and from its landing north of plaintiffs' premises and to and from said warehouse, said defendant being enjoined, however, when loading or unloading cars at the north door of its warehouse from having the cars project in the rear of plaintiffs' premises for longer than 48 hours or project so far north as to prevent ingress or egress to plaintiffs' premises from said alley; it is pro-

vided and adjudged, however, that said defendant is not to be held responsible for the act or acts of the Northern Pacific Railway Company or any other railways or their employes, unless at the request, suggestion or solicitation of defendant, its officers, servants or agents.

"It is further ordered, adjudged and decreed that the said defendant be and it is hereby restrained and enjoined from using trucks on the easterly portion of that certain concrete pavement or sidewalk on the east side of Chestnut street immediately in front of and adjoining the premises of said plaintiffs, defendant being permitted, however, to run its trucks on the westerly portion of such concrete pavement or sidewalk, the intention hereof being that the easterly portion of such concrete pavement or sidewalk in front of and adjoining plaintiffs' premises shall be used as a sidewalk for plaintiffs and the public generally."

The plaintiffs, claiming the relief granted was inadequate, have appealed.

By the first assignment of error it is insisted that the respondent should be enjoined from using the pavement in front of appellants' premises "at any time or for any purpose with either hand or electric power trucks, or for any other purpose than the use of pedestrians." The concrete pavement on the east side of Chestnut street is referred to. Primarily, the pavement is not, and was not intended to be, a sidewalk. It was laid about the time the respondent moved to its present quarters, and in contemplation of their needs and others of a similar kind. The improvement was made on the petition of the property owners, and while the appellants were not petitioners therefor, Mr. Ostant was present when the city commissioners considered and determined the kind of pavement to be laid. The evidence is clear that they decided to construct it as it was constructed, with thicker concrete than was required or used in side-

walks proper, level to the property line with the remainder of the street, so that the new pavement could and should bear vehicular traffic similar to street construction often found in wholesale districts, and like other similar pavements in portions of the business district of the city of Everett. The pavement is one and one-half times as thick as ordinary sidewalk construction, and was decided upon with the understanding (which was carried out) that appellants' property should bear the cost of only the ordinary thickness, and the remainder of the property in the improvement district should meet the excess cost in front of appellants' property and the whole cost of the improvement elsewhere.

The electric truck complained of is a small vehicle used in the warehouse and sales rooms and also on the street between those places. Its wheels are rubber tired; it is three or four feet wide and fifteen to eighteen inches high; and it has a capacity of one to one and one-half tons. Mr. Ostant testified: "The empty truck goes about five or six miles an hour, and when loaded, hardly a mile an hour." Some of appellants' witnesses testified that, in passing, "it did not interfere with anybody." Indeed, the testimony shows the electric truck was being used on the pavement on an average of one trip each day and that its interference with any one was practically negligible. The situation is clearly shown by the testimony of the assistant city engineer, as follows: "I do not believe I know of any street in Everett where there is less traffic by pedestrians than on the east side of Chestnut street; don't believe I do; about the only pedestrians you would expect would be Mr. Ostant's family, and a sidewalk four to six feet wide would be sufficient; there would be no reason for putting in a fourteen feet con-

crete pavement six inches thick except for business districts."

It is argued that the pavement is, strictly speaking, a sidewalk only and should be used in no other way. We have seen that, within the knowledge of the appellants, the city authorities constructed it for the use of vehicles as well as pedestrians. The city is not a party to this action, nor is there in evidence any traffic ordinance of the city. In *State ex rel. Attorney General v. Seattle Gas Co.*, 28 Wash. 488, 68 Pac. 946, this court said:

"We have said that the presumption of law as to a public officer is that he does his duty. The same presumption prevails as to the officers of a city government, to whom is delegated by the state the power of controlling the streets of the city. It will not be presumed that they permit the use of the streets in violation of law. In the first instance, they are charged with the duty of controlling the use of the streets; . . ."

Independent of such presumption, however, under the facts and circumstances in evidence here, the judgment on this feature of the case abundantly protects the appellants in their property and personal rights.

The other assignments of error call in question the use made of the railroad spur in the alley at the rear of appellants' property, of which little need be said. The respondent is not a public service corporation nor is it interested in the ownership, control or maintenance of the spur. It belongs to the Northern Pacific Railway Company, which constructed it with the consent of the city, upon a primary grade fixed by the city. Subdivision 9, § 7507, Rem. Code (P. C. § 678), empowered the city to permit the use of the alley for that purpose, and it was built with the understanding it was to be a common-user spur, subject, of course, to

the use of appellants as well as other persons.   The establishment of it with its resultant injury to appellants' property, if any, creates no liability against the respondent.   All that the respondent can be holden for is the manner of its use of cars in loading and unloading them, and in this respect the judgment entered by the trial court is correct, reasonable and equitable.

Judgment affirmed.

PARKER, C. J., MAIN, HOLCOMB, and TOLMAN, JJ., concur.