[No. 12817. Department One. August 16, 1916.]

THE STATE OF WASHINGTON, *on the Relation of W. S. Gilbert, Respondent*, v. PROSECUTING ATTORNEY OF SPOKANE COUNTY *et al., Appellants.*[1]

QUO WARRANTO — POWER TO INSTITUTE — DISCRETION — STATUTES. Ultimate discretion is vested in the court to order the prosecuting attorney to institute *quo warranto* proceedings, by Rem. & Bal. Code, § 1035, which provides that the information may be filed by the prosecuting attorney upon his own motion whenever he deems it his duty to do so, or shall be directed by the court or other competent authority; "may" being used not in the permissive, but in the alternative sense, and the statute being remedial and to be liberally construed.

SAME — PROCEEDINGS TO COMPEL — PARTIES ENTITLED — INTEREST. Since no peculiar interest need be shown by the petitioner in order to invoke the power of the court to direct the prosecuting attorney to institute *quo warranto* proceedings against a corporation, it is immaterial that the petitioner is attorney for competitors of the corporation.

SAME—PROCEEDINGS TO COMPEL—AGAINST BANKING CORPORATION— PETITION—SUFFICIENCY—STATUTES. Under Rem. & Bal. Code, § 1034, authorizing *quo warranto* against a corporation when it does or omits acts which amount to a surrender or forfeiture of its corporate rights and privileges, or exercises powers not conferred by law, and Id., § 3317, making it unlawful to transact a banking business in cities of 50,000 inhabitants without property of the cash value of $100,000, and requiring the stock to be paid in full within a certain time and providing that failure to comply with the act shall subject it to a penalty of $100 per day, a petition to compel the prosecuting attorney to institute *quo warranto* proceedings makes a *prima facie*

[1]Reported in 159 Pac. 761.

case, where it alleges that a bank with a capital of $25,000 disposed of its assets, ceased to do business and liquidated its liabilities in 1908, that it surrendered its stock, has not paid its penalty of $100 per day for violations of the act, and is seeking to reissue the stock to others and recommence business with $25,000 capital stock in a city of over 50,000 population; since the same is sufficient to put the bank upon its defense, the merits of that matter not being triable in the present proceedings to which the bank is not a proper party.

Appeal from an order of the superior court for Spokane county, Kennan, J., entered April 5, 1915, in favor of the petitioner, directing the prosecuting attorney to institute *quo warranto* proceedings, after a hearing before the court. Affirmed.

*Clyde H. Belknap* and *Danson, Williams & Danson* (*Geo. D. Lantz*, of counsel), for appellants.

*Smith & Mack* and *Hamblen & Gilbert*, for respondent.

ELLIS, J.—W. S. Gilbert, a citizen and taxpayer of Spokane county, filed a petition in the superior court of that county praying for an order against the prosecuting attorney of that county directing that officer to institute in his official capacity the necessary proceedings to inquire by what authority the Union Savings Bank, a corporation organized under the laws of this state, was exercising, or about to exercise, the functions of a banking corporation. Accompanying the petition and made a part of it was a proposed information in the nature of *quo warranto*, which, omitting formal parts, was as follows:

"(1) That on or about the 31st day of August, 1906, the defendant, Union Savings Bank of Spokane, was organized and incorporated under the laws of the state of Washington, with a capital stock of $25,000, for the purpose of carrying on and conducting a general commercial banking business in the city and county of Spokane, state of Washington.

"(2) That after the organization of said Union Savings Bank of Spokane as aforesaid, it proceeded to do business as a bank in the said city and county of Spokane, state of

Washington, until some time during the year 1908, at which time the said defendant disposed of its entire business and assets together with its entire capital and good will, to another bank, the stock of which it purchased for its own stockholders with defendant's capital, liquidated and discharged all of its obligations and liabilities and entirely ceased to transact any further business as a bank or at all; and the stockholders therein at said time, surrendered to said bank, their stock certificates.

"(3) That since the year 1908, the said bank has ceased to do business as a bank; has wholly and entirely abandoned the banking business and any other business, and its stockholders, ever since the year 1908, have had no intention of carrying out the purposes for which said bank was organized and established.

"(4) That the said defendant has wholly failed, neglected and refused at all times from and after it ceased to do business as above alleged, to put in its capital stock in full, in cash as required by law, and has likewise failed and neglected and refused to pay the penalty of $100 per day required and stipulated by law to be paid by reason of its failure to comply with the laws of the state of Washington, relative to the payment of its capital stock in full in cash.

"(5) That at all the times herein mentioned, the city of Spokane has had and now has more than fifty thousand inhabitants.

"(6) That said defendant is now about to resume business, and is about to carry on a banking business in the city and county of Spokane, state of Washington, and is about to re-issue its old stock and proceed to do business as a bank, in the city and county of Spokane, state of Washington, with a capital and capital stock not exceeding $25,000 and without payment of any of the penalty due from it to the state of Washington, on account of its failure to comply with the laws of the state of Washington, relating to banks.

"(7)  That said defendant has surrendered and forfeited its rights and privileges as a corporation, and its right to do business as a bank in the city and county of Spokane, state of Washington, and is exercising, or about to exercise powers as a bank, not conferred by law,

"Wherefore, plaintiff prays that the court enter a decree forfeiting all the rights and privileges of the defendant here-

in as a corporation; adjudging that said defendant has no right or authority to conduct a banking business in the city and county of Spokane, state of Washington, or at all, and granting such other and further relief to plaintiff as may be appropriate in the premises."

The petitioner, after setting out, but at much greater length, all of the facts alleged in this proposed information, alleges, in substance, that, on March 2, 1915, acting on behalf of several bankers of Spokane, he laid before the prosecuting attorney all of those facts, offered to furnish the evidence to establish such facts, and requested the prosecuting attorney to file an information in the nature of *quo warranto* against the bank for the purpose of contesting its right to do business as a bank in the city and county of Spokane, but the prosecuting attorney, without exercising any discretion, refused to proceed unless first directed to do so by the state bank examiner or by the court; that, on March 3, 1915, petitioner requested the state bank examiner to direct the prosecuting attorney to proceed in the premises, but the bank examiner, without investigation, arbitrarily refused and still refuses to so direct, taking the position that the matter is one of such public importance that it should be determined by the courts; that on March 11, 1915, petitioner presented to the prosecuting attorney the proposed information above set out, requesting him to sign, verify and file the same and, on behalf of the state of Washington, to inquire into the right of the bank to do business as a bank in the city and county of Spokane, and again offered to produce the necessary evidence to substantiate the things alleged in the information, but the prosecuting attorney, without inquiry into the merits of the information, arbitrarily refused to sign, verify and file the information, and again refused, and still refuses, to proceed in any manner against the bank.

On the filing of the petition, the court made a show cause order, a copy of which with a copy of the petition was served upon the prosecuting attorney, who answered, admitting the

allegations of the petition as to the organization of the Union Savings Bank of Spokane in 1906 with a capital stock of only $25,000; that it continued in business until November, 1908, when it liquidated its obligations and ceased to transact a banking business until about February 1, 1915; admitting that the city of Spokane has more than 50,000 inhabitants; admitting that the bank is about to carry on a banking business in that city with a capital stock of $25,000 fully paid; admitting that petitioner requested the prosecuting attorney to file an information in the nature of *quo warranto* against the bank as alleged in the petition; denying that the prosecuting attorney refused, without consideration or investigation, to proceed in the premises, and alleging that, after carefully investigating the matter and ascertaining that the *Attorney General* of the state had given an opinion that the Union Savings Bank had not forfeited its charter and has a right to transact a banking business, and that the state bank examiner had given permission to the bank to transact a banking business, the prosecuting attorney, being of the opinion that no legal reason exists for the filing of the information requested, refused, and still refuses, to sign such information or to prosecute the proposed proceeding in *quo warranto*.

The matter was heard by the court on the admissions in the pleadings and on affidavits. The affidavits of W. S. Gilbert and M. E. Mack in support of the petition were to the effect that the prosecuting attorney did not in any manner investigate the facts alleged in the petition, and that he stated that he did not care to investigate the facts or go into the law of the case unless ordered to proceed either by the state bank examiner or by the court; that he did not wish to file an information on his own motion at the instance of attorneys for other banks because he desired to remain neutral, but that if ordered to do so, either by the bank examiner or by the court, he would be glad to file the information and prosecute it vigor-

ously, and finally refused to proceed in any manner unless directed to do so by the court.

On behalf of defendant, two affidavits were filed. That of R. J. Danson, one of the original incorporators of the bank, states that, at the time the bank ceased business in 1908, it intended, and has at all times since intended, to resume a banking business, and has at all times paid its corporate license fees to the state of Washington. The affidavit of E. W. Edgington, cashier of the Security State Bank of Spokane, successor to Union Savings Bank by change of name, states that affiant first became a stockholder in the Union Savings Bank about the first of March, 1915; that, prior thereto, he furnished the state bank examiner with the records of the bank, and represented to the examiner that the bank was incorporated in 1906 and continued in business until 1908, when it ceased to conduct a banking business; that it had paid its annual license fees up to date; that affiant with others desired to take over the stock of the corporation, replace the capital, change its name, and commence business under a new name with new stockholders in the city of Spokane; that the bank examiner thereafter sent affiant an opinion of the *Attorney General* containing the information that the corporation had the right to do business in the city of Spokane; that, relying upon such opinion and the permission of the state bank examiner, affiant and various others purchased the stock of the corporation from its then owners, amended its articles of incorporation with the consent of the secretary of state, purchased fixtures and prepared to open business, and were ready to begin business with the entire capital stock of $25,000 intact, and that if affiant and his associates are not now permitted to continue business, irreparable injury will result; that the petitioner Gilbert is not a stockholder nor interested in the corporation in any manner other than the general public, that he is not a creditor of the corporation, but is one of the attorneys for certain other banks of which this bank if permitted to con-

tinue in business will be a competitor, and that the object of the petitioner in this proceeding is to suppress competition.

Upon the pleadings and these affidavits, the court entered an order directing the prosecuting attorney to institute proceedings in *quo warranto* against defendant bank substantially as prayed for in the petition. From this order, the prosecuting attorney and Union Savings Bank have appealed. The petitioner, as respondent, moved to dismiss the appeal on the ground that the order was not a final order. This court, on the hearing of that motion, held that the order was a final order, in that the proceeding was in the nature of mandamus against the prosecuting attorney to compel him to perform a duty resulting from his office, and that this proceeding is in no sense a proceeding against the bank. *State ex rel. Prosecuting Attorney Spokane County v. Union Savings Bank*, 86 Wash. 48, 149 Pac. 327.

Our decision on the motion to dismiss settles the law of the case as to who are proper parties. We shall, therefore, treat this appeal as an appeal by the prosecuting attorney alone.

I.  Appellant first contends that it is a matter within the discretion of the prosecuting attorney whether or not he shall institute *quo warranto* proceedings, and that the court has no power to compel him to act against his will. The governing statute, Rem. & Bal. Code, § 1035, reads as follows:

"The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

It is clear that the legislature conceived that cases might arise in which the prosecuting attorney might not "deem it his duty" to file the information, yet in which the rights involved might be of such public moment as to make it essential that they be determined by the court after a full trial on the

law and the facts.   Hence the legislature provided that the
information may be filed by the prosecuting attorney, not
only whenever he deems it his duty to file it, but also when-
ever he "shall be directed by the court or other competent au-
thority."   Appellant argues that the use of the word "may"
in the opening line of the statute has a permissive significance
and vests a final discretion in the prosecuting attorney.   But
this cannot be so unless we strike from the statute the clause
last quoted.   On the contrary, when that clause is considered
it is clear that the word "may" is used, not in the permissive,
but in the alternative sense.   That is to say, the information
*may* be filed *either* at the instance of the prosecuting attorney
*or* of the court.   Clearer terms than those of the statute
could hardly be framed to deny a final discretion to the prose-
cuting attorney and vest an ultimate discretion in the courts.
The statute neither says nor implies that the court may di-
rect the prosecuting attorney to act only when that officer
has fraudulently or corruptly refused to act.   It distinctly
reposes the final discretion in the court, regardless of the at-
titude or motives of the prosecuting attorney.

The question is no longer an open one in this state.   In
*State ex rel. White v. Point Roberts etc. Co.,* 42 Wash. 409,
412, 85 Pac. 22, a private person having no interest in the
corporations involved sought on his own relation by *quo war-
ranto* proceedings to enjoin their corporate acts and declare
void their charters.   It was there held in substance that, un-
der the statute, the relator had no standing to proceed on his
own relation because of his lack of the personal interest re-
quired by the last clause of the statute.   But this court said:

"It must not be understood that it is within the power of
the prosecuting attorney of any county to capriciously or
fraudulently prevent the state or its citizens from compelling
corporations to obey the laws, or to deprive the state or its
citizens of a judicial investigation of alleged violations of the
law on the part of the corporations.   But instead of proceed-
ing upon their own relation, as the appellants did in this
case, they had a right to ask the court to direct the prose-

cuting attorney to proceed with the case upon the showing made in their complaint, and if the court refused to do this, an appeal would lie to this court and the question of the sufficiency of the complaint would be determined on such appeal."

Appellant says that this is mere dictum. It is dictum in a sense. We are therefore not bound by its implication that it is only on a showing of fraud or caprice on the part of the prosecutor that the court can act. The terms of the statute are too clear to the contrary. But in so far as the above quoted language shows that the relator there had mistaken his remedy by pointing out his true remedy, it is not in any just sense dictum. In any event, in the recent case of *State ex rel. Cummings v. Blackwell*, 91 Wash. 81, 157 Pac. 223, decided since the present case was argued, the exact question here presented was decided adversely to appellant's contention. That was an action in mandamus to compel the prosecutor to file an information in *quo warranto* against a municipal corporation. The trial court ordered the prosecutor to investigate the facts and determine whether he would or would not file the information. We said:

"It seems plain from the order quoted that the order, in effect, requires an answer to the petition after the prosecuting attorney has investigated the facts. When the answer is filed, if issues are made, the trial court will determine the controversy and enter a final order."

Obviously if, as contended by appellant here, the court has no power to compel the prosecutor to act against his will, this court did an idle and vain thing when it there, in substance, directed the trial court, when the issues should be made up, to try the controversy and enter a final order.

The case of *State ex rel. Rosbach v. Pratt*, 68 Wash. 157, 122 Pac. 987, mainly relied upon by appellant, is not apposite. In that case the powers of the industrial insurance commission and the *Attorney General* under the industrial insurance act were involved. We held that, *under that act*, the

commencement of actions to enforce payment of delinquent assessments was a matter "resting wholly within the discretion of the commission and the *Attorney General.*" The statute governing *quo warranto* was neither involved nor mentioned. As we have pointed out, the *quo warranto* statute expressly vests the ultimate discretion in the court. The distinction is plain.

The same distinction exists, so far as the controlling statutes are divulged in the opinions, in every case cited by appellant from other jurisdictions. We shall not review them, since we are clear that, under our statute, the superior court has the ultimate discretion to order the prosecuting attorney to file the information. The same distinction exists as to cases involving *quo warranto* at common law. As pointed out in *Mills v. State ex rel. Smith,* 2 Wash. 566, 27 Pac. 560, "the common law on that subject has been supplanted by the statute," and again:

"The legislature has looked out for the interests of the public by providing that the information shall be filed by the prosecuting attorney, either on his own relation, or when directed by the court or other competent authority; and private interests are provided for in the latter part of the section by the words, 'or by any other person on his own relation.' "

Moreover "this statute is remedial and must be liberally construed." *State ex rel. Attorney General v. Seattle Gas & Elec. Co.,* 28 Wash. 488, 493, 68 Pac. 946, 70 Pac. 114.

II. It is next urged that the petition should be denied because it was filed at the instigation of other banks of which the Union Savings Bank is a potential competitor. Our statute, as we have seen, vests the ultimate discretion in the court as to whether or not the information shall be filed. The statute does not declare, either expressly or by implication, that the court in directing the prosecuting attorney to file the information shall only proceed upon its own motion. Obviously the statute intends that the court may pro-

ceed either *sua sponte* or upon the application of any citizen taxpayer, whether he claim a special interest or not. This is plain, since under the last clause of the statute, a person who claims a personal interest in the office, franchise or corporation may proceed "on his own relation" without regard to the attitude of the prosecuting attorney in the premises. No peculiar personal interest need be shown where the petitioner invokes the power of the court to direct the prosecuting attorney to file the information. It follows that the fact that such petitioner may be a potential competitor is not material one way or another. The question is whether the case presented is intrinsically meritorious, not who will its maintenance specially benefit. The question is one of merits, not motives.

III. But it is contended that, in any event, the showing made by the petitioner was not sufficient to invoke the power of the court to direct the filing of the information. The statute, Rem. & Bal. Code, § 1034, declares:

"An information may be filed against any person or corporation in the following cases:— . . . 5. Or where any corporation do or omit acts which amount to a surrender or a forfeiture of their rights and privileges as a corporation, or where they exercise powers not conferred by law."

The question, therefore, is, Has the petitioner made a *prima facie* showing that the corporation here in question has done or omitted acts which amount to a surrender or forfeiture of its right to do business as a bank, or is it seeking to exercise powers not conferred by law?

The statute governing banking corporations, so far as here material, reads as follows:

"It shall be unlawful for any corporation to transact a banking business unless at the time of organization and commencement of such banking business, such corporation has property of cash value as follows: . . . in cities having a population of more than 50,000 inhabitants, $100,000. Such property shall be in lawful money as provided in section

3321.  Provided, that the provisions of this section as to the amount of capital shall not apply to any bank or trust company organized and doing business at the time of the passage of this act: *But provided further, that the capital stock of any bank or trust company transacting business in this state, organized prior to the twelfth day of June, 1907, shall be paid in full in cash within five months from the date upon which this act shall take effect. And a failure to comply with the provisions of this section shall subject any such bank or trust company to a penalty of one hundred dollars per day for each day of such failure, and such penalty may be collected by suit against such bank or trust company on the relation of the state examiner, or attorney general.*" Rem. & Bal. Code, § 3317.

This section, save the part which we have italicized, was section 8 of an act which went into effect July 12, 1907 (Laws of 1907, p. 520, § 8). The italicized provisions were added by section 5 of an act which went into effect March 19, 1909 (Laws of 1909, p. 693, § 5). It is unnecessary at this time to construe this law further than to say that it seems to imply that, in order for any bank with a capital stock less than $100,000 in cities of over 50,000 population to avail itself of the privileges conferred by this law, such bank must have been transacting business in this state on March 19, 1909, when this act in its present form went into effect. Whether or not the bank here in question was transacting business within the intent of that act at that time is a question which cannot be tried out in this mandamus proceeding. We are only called upon to determine whether the petition made a *prima facie* showing that it was not. It is alleged, in substance, that the bank disposed of its assets, liquidated its liabilities, and ceased to do a banking business in 1908. This is admitted. It is alleged that the stockholders then surrendered their stock, and that the bank is now seeking to reissue the stock to others who intend to replace the capital of $25,000 and recommence business as a bank in a city of over 50,000 population. This also is ad-

mitted, except that the prosecuting attorney denies on information and belief that the original stock was ever surrendered. Neither of the affidavits filed in support of the answer distinctly denies such a surrender. We have set out the full substance of the facts presented on both sides in our statement of the case. It is unnecessary to repeat them here. We are satisfied that they present a *prima facie* case calling for a defense on the part of the bank. It has no standing to make that defense in this proceeding which, as we stated on the motion to dismiss the appeal, is in no sense a proceeding against the bank. The answer of the prosecuting attorney indicates that, in refusing to file the information, he acted upon the opinion of the *Attorney General*, in whom the statute vests no discretion in the premises. As we have seen, the primary discretion is vested in the prosecuting attorney, the ultimate discretion in the court. That officer having refused to proceed, we fail to find that the court exceeded its discretionary powers in ordering him to file the information on the showing made.

It would be obviously unfair to further discuss or prejudge the questions of law and fact in this proceeding to which the bank is in no sense a proper party. These are things which must first be heard and determined by the trial court in the *quo warranto* proceeding.

The order appealed from is affirmed.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.