[No. 19881.   Department Two.   October 25, 1926.]

THE STATE OF WASHINGTON, *on the Relation of*
JOHN H. DUNBAR, *Respondent*, v. AMERICAN
UNIVERSITY OF SANIPRACTIC, *Appellant*.[1]

[1] CORPORATIONS (234)—DISSOLUTION—VIOLATION OF STATUTE. Where a corporation conducting a sanipractic school or college falsely and fraudulently issued diplomas to unqualified persons, wrongfully entitling them to practice, its corporate franchise may be forfeited in *quo warranto* proceedings, as expressly provided by Rem. Comp. Stat., § 2384, in case of the violation of Id. § 2382; which provides that, where two or more persons shall conspire to commit a crime or any act injurious to the public health, morals, or for the perversion of justice, they shall be guilty of a gross misdemeanor; and it is no valid objection that the court was without jurisdiction to try the corporation for a crime in a civil action.

[2] QUO WARRANTO (15)—WRONGFUL EXERCISE OF FRANCHISE—PLEADING—ANSWER.   In *quo warranto* to forfeit the franchise of a corporation for violation of law, it is proper to strike out an affirmative defense to the effect that enemies of the corporation instituted and assisted in the prosecution of the suit; the question being one of merits, not motives.

[3] SAME (16)—TRIAL OR HEARING—PRIVATE COUNSEL.   In *quo warranto* to forfeit the franchise of a corporation, it is discretionary with the trial court to permit private counsel to be associated with the *Attorney General*.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered February 14, 1925, upon findings in favor of the plaintiff, in *quo warranto* dissolving a corporation after a trial on the merits to the court.   Affirmed.

*Spencer Gray*, for appellant.

*The Attorney General* and *R. G. Sharpe, Assistant*, for respondent.

¹Reported in 250 Pac. 52.

MITCHELL, J.—This is an action in the nature of *quo warranto,* instituted in October, 1924, by the *Attorney General* for a judgment against the American University of Sanipractic, a corporation, of Seattle, forfeiting its corporate rights and dissolving the corporation. The trial resulted in findings, conclusions and judgment for the relator. The defendant has appealed.

The legislature, at its regular session in 1919, passed an act to regulate and license the practice of drugless therapeutics in this state (Laws of 1919, ch. 36, p. 64) [Rem. Comp. Stat., § 10112]. Under the act, applicacants for licenses were divided into three classes, substantially as follows:

(1) Those who have completed a residence course of three entire sessions of thirty-six weeks each at a chartered drugless school, the entrance requirements of which were a high school education or its equivalent, and who pass an examination in fourteen subjects;

(2) Those having a diploma from a chartered drugless school with entrance requirements of a common school education or its equivalent, and two years continuous practice in the state of Washington without examination; and

(3) Those who have been in continuous practice in any of the drugless systems mentioned in the act for the last four years, two years in one place in the state of Washington, upon taking an examination in five subjects.

The act provided for a board to be known as the board of drugless examiners of the state of Washington. This board was abolished by the administrative code of the Laws of 1921, p. 68 (Rem. Comp. Stat., § 10893), [P. C. § 4-135], and the duties of the former board of drugless examiners thereafter devolved upon the director of licenses. Section 4 of the Laws of 1919,

p. 67 (Rem. Comp. Stat., § 10114) [P. C. 3737], provides:

"The applicant for an examination must file at least thirty days prior to a regular meeting satisfactory testimonials of good moral character and a diploma issued by some legally chartered drugless college, or satisfactory evidence of having possessed such diploma, except as herein otherwise provided, and must fill out a blank application to be sworn to before some person authorized to take acknowledgments, showing that he or she is the person named in the diploma, is the lawful holder thereof, and that the same was procured in the regular course of instruction and examination, without fraud or misrepresentation."

Shortly after the passage of the act, the appellant corporation was organized for the purpose, among others, as declared in its articles of incorporation, to establish, own, conduct, and maintain an institution for the instruction of students in the various sciences and branches of learning requisite or beneficial to the understanding of the science and prevention of disease, and to give instructions in the science of sanipractic and other systems of treatment, to employ instructors and assistants, to grant diplomas and degrees to its students; and to do every act or duty necessary, proper, convenient, or incidental thereto, for the successful establishment, operation and maintenance of said institution. It appears that, shortly after its organization, the appellant adopted and published a curriculum which, upon being examined by the board of drugless examiners, was found to be satisfactory, so that thereafter a diploma issued by it was accepted by the board and director of licenses in all applications for licenses in any class requiring a diploma from a chartered drugless school, by the provisions of the act.

The theory of the second amended complaint, on which the trial was had, is that the appellant vio-

lated the law by conspiring with the recipients of fraudulent diplomas to commit crimes, and also to commit acts injurious to the public health, public morals and the due administration of the law. The complaint in the case, reflected in the findings of fact, substantial portions of which will be given later, was demurred to generally. The overruling of the demurrer and that the evidence does not justify the findings and judgment are assigned as errors. They may be considered together. In addition to other pertinent and material findings, the court found as follows:

"V. That the defendant corporation, pursuant to the purposes and objects set forth in its articles of incorporation, began conducting a chartered drugless school known as the American University of Sanipractic in Seattle, King county, Washington, on or about January 5, 1920, and continued to maintain and operate said school up to on or about the 10th day of April, 1921, after which said time said school was closed until on or about September 1, 1921, at which time said school was reopened and has been conducted and operated ever since that time down to the present time.

"VI. That ever since January 5, 1920, the defendant, through its officers, trustees and faculties, has held itself out to the general public and to the state board of examiners and to the director of licenses of the state of Washington and to the examining committee before whom applicants for licenses under said act of 1919 are required to be examined as being a chartered drugless school, whose entrance requirements were a high school education or its equivalent, and whose diplomas established that the recipients thereof had completed a residence course in said school of three entire sessions of thirty-six weeks each, and had a high school education or its equivalent, and had a thorough knowledge of anatomy, physiology, hygiene, symptomatology, urinalysis, dietetics, hydrotherapy, radiography, electrotherapy, gynecology, obstetrics, psychology and mechanical and manual manipulation.

"VII.   That during the year 1920, the state board of druigless examiners made an investigation of the curriculum and methods of operation of the defendant school and found that the same was then being conducted as it advertised itself and held itself out to be in paragraph V, and by reason of such investigation, and relying upon the representations set forth in paragraph VI thereof, the said examining committee and the director of licenses of the state of Washington have, ever since the month of December, 1922, with but two or three exceptions, granted licenses to practice drugless therapeutics in the state of Washington to all applicants holding diplomas issued by defendant who have been able to pass the examination required of such applicants.

"VIII.   That in the year 1919, the board of drugless examiners recognized a system of drugless practice known as 'sanipractic' as a separate and co-ordinate system of drugless practice under section 4, subdivision 5 of the said chapter 36, Laws of 1919, which said system of healing, to wit: Sanipractic, although based upon the fundamental principle of sanitation and a separate and co-ordinate principle, included the practice of mechano-therapy, suggestive therapeutics, food and science and phys-cultopathy, as well as chiropractic and branches of osteopathy, and thereafter during the years 1919 and 1920 the state board of drugless examiners, upon diplomas theretofore issued and upon previous practice and examination as provided by said chapter 36, Laws of 1919, issued to a large number of individuals licenses to practice sanipractic within certain named subjects but which said licenses did not grant to the recipients thereof the right to practice sanipractic in all its branches as aforesaid. That in granting said limited sanipractic licenses the board of drugless examiners granted the recipients thereof the right to practice all of the branches of drugless healing which the diplomas that they held and the previous practice which they had had and the examinations they were given entitled them to practice under said chapter 36, Laws of 1919.

"IX. That in the year 1922, and prior to December 15th thereof, the examining committee made, promulgated and published a rule and regulation under the terms of which all individuals holding sanipractic licenses as aforesaid, and who also held a diploma conferring the rank and title of sanipractic physician from the defendant school, should be issued a full sanipractic license upon surrendering their old license and without further examination.

"X. That beginning with June 3, 1922, and continuing down to the month of June, 1924, the defendant school issued to various individuals a large number of diplomas, to-wit, in excess of one hundred and ten diplomas, conferring the rank and title of sanipractic physician upon the recipients thereof, and that at the time said diplomas were issued and received by the various recipients thereof, the defendant school and its officers and faculty, as well as the recipients of said diplomas, well knew that the defendant school had been accredited by the department of licenses and the examining committee, as aforesaid, and well knew the rule of the said examining committee giving the right to holders of limited sanipractic licenses to receive a full sanipractic license without examination upon accompanying their application therefor with a diploma from the defendant school. That the recipients in many cases never attended the defendant school, and in many other cases attended but a few days, and in many other cases attended but three or four months at the most, and in no case attended in excess of a year, and in many cases did not have a high school education or the equivalent thereof at the time of receiving their said diplomas, but that nevertheless a large number of such diplomates, though unqualified to receive such diplomas as aforesaid, and who already had a limited sanipractic license, presented their said diplomas to the license department and received a full sanipractic license without examination under such rule as aforesaid, and a large number of other diplomates, although not entitled to a diploma according to the curriculum of the school and although not qualified to practice drugless healing as a sanipractic physician, there-

after applied to the department of licenses for a license to practice drugless healing, accompanying said application with said diploma or a photographic copy thereof, and by reason of holding said diploma were allowed to take the examination provided by said chapter 36, laws of 1919, and thereafter did receive a license to practice drugless healing. That other holders of such diplomas, without the proper educational qualifications or resident attendance at the defendant school, applied for licenses and accompanied said application with their said diplomas, but were not allowed to take the examination by reason of their disqualification having been discovered by the examining committee and department of licenses.

"XI. That the written applications of said diplomates for licenses were, in a great majority of cases, prepared and made out in the defendant school and with the assistance of the president and dean of said school.

"XIII. That the consideration paid by said diplomates to said defendant school had, in most cases, no relation to the actual time spent in said school and varied in amounts from $50 to $600, and in many cases where such diplomates spent but a few days or a month or so in said school the fee demanded and paid for such diplomas and the meager course of study resulting therein was as high as where students attended said school for a year or more.

"XV. That the defendant wrongfully and unlawfully conspired with each and all of the individuals to whom diplomas were issued when the recipients thereof did not have the educational qualifications nor the requisite residence attendance prescribed by said chapter 36, Laws of 1919, to injure the public health and public morals of the citizens and residents of the state of Washington, and for the perversion of the due administration of the laws of the state of Washington by causing such diplomas falsely and fraudulently to be issued by said school to each and all of said individuals for the purpose of presenting the same to the department of licenses for the purpose of securing a license to practice drugless healing, and for the purpose of permitting the recipients of said diplomas to

hold themselves out as qualified to practice drugless healing, and to take the examination which would entitle them to practice drugless healing in the state of Washington.''

While it is true that, in many respects, the evidence on which the findings were made is in conflict with that introduced on behalf of appellant, still we are satisfied that it clearly preponderates in favor of the findings. The recipients of the diplomas who used them to get licenses were, of course, charged with knowledge of the law. They knew, as did the appellant, that the diplomas were necessary in their respective cases to entitle the applicants to take examinations for licenses to practice. They knew that the diplomas they presented were accepted by the license department as sufficient. The appellant, by issuing the diplomas, and the recipients, by filing them with the license department, were therefore guilty of fraud and a violation of the law.

[1] As we understand appellant on this branch of the case, the precise argument is that the complaint charges, and that the court found the appellant guilty of, a crime; that is, as contended for on its behalf, ''the court was without jurisdiction to try appellant for a crime in a civil action.'' The situation may be viewed from two points: (1) under the statute, and (2) independent of the statute, but not inconsistent with it. Rem. Comp. Stat., § 2382 [P. C. § 8783], provides, among other things,

''That whenever two or more persons shall conspire —(1.) To commit a crime; . . . or (6.) To commit any act injurious to the public health, public morals, trade or commerce, or for the perversion or corruption of public justice, or the due administration of the law; . . . Every such person shall be guilty of a gross misdemeanor.''

While Rem. Comp. Stat., § 2384 [P. C. § 8785], provides:

"Every corporation, whether foreign or domestic, which shall violate any provision of section 2382, shall forfeit every right and franchise to do business in this state. *The Attorney General shall begin and conduct all actions and proceedings necessary to enforce the provisions of this section.*"

Again, the rule, as we understand it, is as given in Fletcher, Cyclopedia of the Law of Private Corporations, Vol. 5, § 3235, as follows:

"As has already been noted, *quo warranto* proceedings are usually considered civil in nature, and there is no merger of the civil liability in the criminal offense. A corporation may be proceeded against by *quo warranto* for a misuser or perversion of its franchise, although its officers and agents at the same time may be amenable to the criminal law for the offenses committed by them in the perversion of such franchise. Neither one of these proceedings is a bar to the other, and the corporation may be held to answer for its wrongful acts before its agents are tried and convicted of their guilty acts. For instance, it has been held that violators of an anti-trust act may be proceeded against by indictment or information, and the remedies by information and in equity, also exist. But the proceedings by information differ in form and consequence from a prosecution by indictment, as in the former case the state proceeds for the violation of the corporation's contract, and in the latter case it prosecutes for a violation of a public law."

7 R. C. L. (Corporations) § 716, p. 711, says:

"If a penalty is imposed for an act or omission, and the charter or statute imposing it does not expressly or by necessary implication deprive the state of the right to proceed for a forfeiture, then, on principle, such proceedings should not be cut off."

See, also, *Standard Oil Co. v. Missouri*, 224 U. S. 270, 56 Law Ed. 760; *State ex rel. Attorney General v.*

*Capital City Dairy Co.,* 62 Ohio St. 350, 57 N. E. 62, 57 L. R. A. 181; *State ex rel. Hadley v. Delmar Jockey Club,* 200 Mo. 34, 92 S. W. 185, 98 S. W. 539; *State ex rel. Langer v. Gamble-Robinson Fruit Co.,* 44 N. D. 376, 176 N. W. 103.

In *Standard Oil Co. v. Missouri, supra,* the court said:

"Separate proceedings may be instituted—one to secure the civil judgment, and the other to enforce the criminal law.  Both cases may involve a consideration of the same facts; and evidence warranting a judgment of ouster may be sufficient to sustain a conviction for crime.  A judgment may in one case sometimes be a bar to the other; but neither remedy is exclusive.  The double liability, in civil and criminal proceedings, finds its counterpart in many instances, as, for example, where an attorney is disbarred or ousted of his right to practice in the court because of conduct for which he may likewise be prosecuted and fined."

Our conclusion is that the demurrer to the complaint was properly overruled, that the *Attorney General* had the right to institute and maintain the proceeding and that on the merits the findings and judgment are sustained by the evidence.

[2]   In its answer to the complaint, the appellant affirmatively alleged that a competitive sanipractic college, together with a number of sanipractic physicians in the state, had undertaken to destroy the appellant's school; that through false reports they had caused the institution of this suit, had employed counsel associated with the *Attorney General* in the case and had contributed large sums of money towards carrying on the case.  This affirmative matter was struck out on the motion of the *Attorney General.*  The ruling, together with the refusal of the trial court to receive evidence to the same effect, offered by the appellant,

constitute assignments of error. The rulings, in our opinion, were right; "the question is one of merits not motives." *State ex rel. Gilbert v. Prosecuting Attorney*, 92 Wash. 484, 159 Pac. 761; *People ex rel. Golconda, etc., Ry. v. Toledo, St. L. & N. O. R. Co.*, 280 Ill. 495, 117 N. E. 701; *People v. Troy Chemical Co.*, 118 App. Div. 437, 104 N. Y. S. 22.

[3] In the trial court, private counsel were, by order, permitted to be associated with the *Attorney General*. Thereupon appellant moved for an order requiring such associate counsel to disclose the names of the persons they represented. The motion was denied, and error is assigned on account of it. Such matters are in the discretion of the trial court, whose action will not be reviewed on appeal in the absence of a showing of an abuse of discretion. No attempt at such showing is made here. The additional counsel were simply associated with the *Attorney General*. The *Attorney General*, as official representative of the state, continued in the active management of the case on behalf of the plaintiff.

The denial of a motion for a new trial, assigned as error, requires no separate discussion. It was properly denied.

Judgment affirmed.

TOLMAN, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.