[No. 22520. Department Two. December 16, 1930.]

THE STATE OF WASHINGTON, *on the Relation of State Humane Society, Appellant,* v. JOSEPH HOVEY, *as Prosecuting Attorney, Respondent.*[1]

*Harry H. Johnston,* for appellant.
*Joseph Hovey,* for respondent.

FULLERTON, J.—The relator, State Humane Society of Washington, a private corporation, having its principal place of business at Tacoma, in this state, filed a petition in the superior court of Kittitas county praying for an order directed to the prosecuting attorney of the county named commanding that officer to institute proceedings against the Kittitas County Humane Society having for its object the forfeiture of its corporate franchise. On filing the petition, an order was issued by the court to the prosecuting at-

[1]Reported in 294 Pac. 258.

torney commanding him to appear and show cause why he should not institute the proceedings requested. The prosecuting attorney appeared at the time appointed, and demurred to the petition. Subsequently, a hearing was had thereon, at which time the court sustained the demurrer, and entered a judgment dismissing the proceedings with prejudice. It is from this judgment that the appeal before us is prosecuted.

The petition, with its accompanying affidavits and documents, are too voluminous to be set forth here at length. Summarized, they tend to show that, prior to instituting the proceedings in the superior court, the relator applied to the prosecuting attorney for the relief desired, presenting to him a petition in the nature of *quo warranto,* complete except as to signature and verification, in which was set forth the purported facts thought to warrant the proceedings. The petition was accompanied with the several affidavits of the officers of the relator, together with an affidavit of its attorney, verifying the facts recited in the petition. These tended to show that the Kittitas County Humane Society had never functioned as a corporation; and that the trustees of the corporation had performed none of their duties as such trustees, and had not carried out the lawful purposes for which the corporation was organized.

More specifically, it was averred that, at the time of the organization of the corporation, there was in existence in Kittitas county a corporation known as the Ellensburg Amusement Company, which for a number of years prior thereto had been

". . . putting on at Ellensburg an exhibition of horseback riding with bucking bronchos, the roping and throwing and bull-dogging of steers and calves, wild cow milking, and wild horse racing; that it was not an uncommon occurrence in said exhibitions for the horses and cattle, especially the cattle, to be se-

verely injured, legs being broken, horns of the cattle torn off, and horses tortured . . . for the purpose of making them buck.''

It is then averred that these exhibitions continued after the formation of the corporation without interference on the part of the officers, members or agents thereof, although they had appointed an agent for the ostensible purpose of preventing cruelties to the animals made use of in the performance of the exhibitions, who, on request, had refused to interfere. It is further averred that the trustees of the corporation were officers of the amusement company, and profited by the exhibitions; that the corporation was organized for the very purpose of acting as a barrier between the amusement company and the citizens of the state who might desire to interfere for the prevention of its cruelties, and not in ''good faith with the honest intention of carrying out the professed objects of its incorporation.''

■ The corporation whose franchise is sought to be forfeited was organized under the incorporation laws of the state, and its rights, privileges and duties are defined at §§ 3184-3207 of Remington's Compiled Statutes. By § 3185, its members and agents, authorized in the manner therein prescribed, have lawful power to interfere and prevent the perpetration of any act of cruelty upon any animal, and may use such force as may be necessary to accomplish the purpose. They are empowered also to summon bystanders to their aid, and may make arrests and institute criminal proceedings against the offenders. They are, however, given no exclusive powers in this respect. Cruelty to animals is denounced by the statute as a misdemeanor, and all sheriffs, constables, police and peace officers are empowered to make arrests for its violation as they may do in other cases of misdemeanors,

and any person may complain of a violation of the act to any court having jurisdiction of the offense in the same manner in which he may complain of other violations of the law.

The remedy the appellant seeks, therefore, is not the only remedy which it can pursue to prevent the evils of which it complains. Nor is it a direct or certain remedy. Indeed, it would seem that, if the proceedings it seeks to have instituted were prosecuted to a successful completion, its purposes would not be advanced thereby. True, it argues that, if the present corporation were out of the way, a new one could be organized which would function in accordance with the purposes and intent of the statute. But this is nothing more than a conclusion. It would seem that, if the exhibitions it condemns were as cruel to animals as it states them to be, the good people of the county in which the exhibitions were held would have long since prevented them by direct action, and since they have not done so, it is hardly to be supposed that they would be more active through the instrumentality of another humane society.

But we think the question before us is a more narrow one than the appellant's argument presupposes. A county humane society is a non-profit corporation. It is not organized for the personal benefit of an individual or the personal benefit of any set of individuals, but is organized for the public good, and is in its substance and effect a public corporation (*Storey v. Seattle*, 124 Wash. 598, 215 Pac. 514). It is thus subject to the supervision of the State Humane Bureau (Rem. Comp. Stat. §§ 10960-10964), and a court would hardly be authorized to destroy it by forfeiting its charter until this branch of the state government had been appealed to without effect. In the present record, there is nothing to show that an effort along

this line has been attempted in order to compel the corporation to function.

Again, we have held that the statute "vests the ultimate discretion in the court as to whether or not the information shall be filed." *State ex rel. Gilbert v. Prosecuting Attorney of Spokane County,* 92 Wash. 484, 159 Pac. 761. This being the rule, the appellate court will not review the discretion exercised by the court of original jurisdiction unless it plainly appears that its discretion has been abused. In this instance, we cannot conclude on the showing made that there has been an abuse of discretion. What might be the rule had the application been directed against the officers of the corporation, we need not determine, but certainly the court should not destroy the corporation until all other means are exhausted to compel it to perform the duties the law contemplates it shall perform.

The precise question here involved seems not heretofore to have been presented in this court. In *State ex rel. Dunbar v. American University of Sanipractic,* 140 Wash. 625, 250 Pac. 52, we affirmed the judgment of the trial court forfeiting the charter of a private corporation. But that was a proceeding instituted by the *Attorney General* in which it was found that the corporation was conceived in fraud, and had fraudulently exercised its corporate powers. Other cases have been called to our attention in which somewhat similar questions have been involved, but at best they have only an indirect bearing (*State ex rel. Atty. Gen. v. Seattle Gas Co.,* 28 Wash. 488, 68 Pac. 946, 70 Pac. 114; *State ex rel. Rosbach v. Pratt,* 68 Wash. 157, 122 Pac. 987; *State ex rel. Cummings v. Blackwell,* 91 Wash. 81, 157 Pac. 223; *State ex rel. Cummings v. Johnson,* 105 Wash. 93, 177 Pac. 699). And in them we have said that the remedy of *quo warranto* must be

exercised sparingly; that it is an extraordinary remedy "which the law does not offer with a liberal hand," and in *State ex rel. Cummings v. Johnson, supra,* we used this language:

" 'Before the prosecuting attorney should be required to file an information in *quo warranto,* a plain case should be made by the petitioner, so that there could be no doubt that the prosecuting attorney would be justified in maintaining the *quo warranto* proceeding.' "

Concluding, as we do, that the situation does not warrant the extreme remedy here sought to be invoked, the judgment of the trial court will stand affirmed.

MILLARD, PARKER, MAIN, and HOLCOMB, JJ., concur.