[No. 31394. Department One. November 24, 1950.]

THE STATE OF WASHINGTON, *on the Relation of Earl R. Winters et al., Appellants,* v. PATRICK M. STEELE, *As Prosecuting Attorney for Pierce County, Respondent.*[1]

[1]Reported in 224 P. (2d) 332.

*Bannon, Soule & Krilich*, for appellants.

*Valen H. Honeywell, Jr.*, and *Martin L. Potter*, for respondent.

*The Attorney General* and *Harold Shefelman, Special Assistant, amici curiae.*

DONWORTH, J.—This action was brought by relator as a resident, taxpayer, and freeholder of Kapowsin school district No. 347, to secure a writ of mandamus commanding respondent, as the prosecuting attorney of Pierce county, to file an information in the nature of *quo warranto* challenging the validity of the organization of school district No. 403 and seeking the ouster of the five school directors thereof. An alternative writ of mandamus was issued by the superior court commanding respondent to forthwith institute such an action or to show cause why he had not done so.

Respondent appeared and filed a demurrer to the application for the writ of mandate. Thereafter, Alton E. Glenn, another resident of the Kapowsin school district, was permitted to join the action as an additional relator. On January 13, 1950, the trial court sustained the respondent's demurrer and, upon relators' refusal to plead further, dismissed the action. Relators have appealed.

The principal facts alleged in appellants' application for the writ of mandate and admitted by the demurrer are as follows: April 30, 1949, a special election was held for the purpose of authorizing the consolidation of certain existing contiguous school districts in Pierce county, so as to form a new school district pursuant to the provisions of Rem. Supp. 1947, § 4693-20 *et seq.* Six school districts were involved, namely: Spanaway school district No. 322, Clover

Creek school district No. 4, Elk Plain school district No. 80, Kapowsin school district No. 347, Rocky Ridge school district No. 59, and Roy school district No. 319.

At this special election, the following alternative propositions were submitted to the voters on one ballot in five of the six school districts above named:

·"PROPOSITION No. I:

"Shall a new school district be formed in Pierce County, Washington, comprising the Spanaway School District No. 322, the Clover Creek School District No. 4, the Elk Plain School District No. 80, the Kapowsin School District No. 347, the Rocky Ridge School District No. 59, and the Roy School District No. 319. ·

"PROPOSITION No. I — YES ☐
"PROPOSITION No. I — NO ☐

"PROPOSITION No. II:

"In the event that Proposition No. I stated above is not approved by the electors of one or more of the six school districts designated therein, shall a new school district be formed in Pierce County, Washington, comprising the Spanaway School District No. 322, the Elk Plain School District No. 80, the Kapowsin School District No. 347, the Rocky Ridge School District No. 59, and the Roy School District No. 319.

"PROPOSITION No. II — YES ☐
"PROPOSITION No. II — NO ☐"

In the Clover Creek school district No. 4, only proposition No. I was submitted to the voters, since proposition No. II did not affect that district.

As a result of the election, proposition No. I failed for the reason that a majority of the electors in Clover Creek school ·district No. 4 voted against it, although this proposition apparently carried in each of the other five districts.

Rem. Supp. 1947, § 4693-40, provides that whenever an election is held to vote on the formation of a proposed new school district, the votes cast by the voters in each component district shall be tabulated separately and the proposition shall be considered approved only if it receives a majority of the votes cast in each separate district voting thereon.

Proposition No. II received a majority of the votes cast in each of the five districts voting thereon. As a result thereof, on May 25, 1949, the county superintendent of schools issued an order establishing a new school district designated as Pierce County school district No. 403, composed of the five school districts named in proposition No. II. A new board of school directors was installed, and other administrative steps were taken as required by the statute to enable the new school district to function as such. Appellants do not question the regularity of these administrative acts.

Certain residents of the former Kapowsin school district No. 347 believed that no authority existed under Rem. Supp. 1947, § 4693-20 *et seq.*, for the submission of proposition No. II at the same election at which proposition No. I was submitted, and employed attorneys to consider the problem. On September 16, 1949, a letter was written by appellants' counsel to the respondent prosecuting attorney, requesting him to inquire into the validity of the organization of Pierce County school district No. 403. Respondent was referred especially to Rem. Supp. 1947, § 4693-41, which is set out in full subsequently in this opinion. The respondent was further requested to institute *quo warranto* proceedings to test the validity of the organization of the consolidated school district.

September 29, 1949, respondent replied by letter to appellants' attorneys, in which he stated in part:

"We have investigated the pertinent facts and examined at some length the applicable statutes, and while we feel that the letter of the statute was not adhered to throughout the consolidation procedure, yet we do not feel that the divergencies were sufficiently substantial to justify our instituting the proceedings which you request."

Thereafter, the appellants prepared an information in the nature of *quo warranto* and requested the respondent to sign, verify, and file it. Respondent refused the request, and appellants instituted this mandamus proceeding to compel respondent to prosecute the *quo warranto* action.

The attorney general, acting on behalf of the superin-

tendent of public instruction, submitted a brief as *amicus curiae* in support of respondent's position.

Appellants' single assignment of error is that the trial court erred in sustaining respondent's demurrer to the application for writ of mandate and dismissing appellants' mandamus action.

Before considering the construction of the statutory provisions upon which appellants rely, it is well to refer to some of our decisions bearing upon the nature and scope of such a proceeding as that before us.

In *State ex rel. Cummings v. Blackwell,* 91 Wash. 81, 157 Pac. 223, this court quoted Rem. & Bal. Code, § 1035 (now Rem. Rev. Stat., § 1035 [P.P.C. § 90-3]), providing for the institution of *quo warranto* proceedings. This section reads:

"The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

In dismissing the petitioner's appeal in the cited case, we said:

"Before the prosecuting attorney should be required to file an information in *quo warranto,* a plain case should be made by the petitioner, so that there could be no doubt that the prosecuting attorney would be justified in maintaining the *quo warranto* proceeding."

See, also, *State ex rel. Cummings v. Johnson,* 105 Wash. 93, 177 Pac. 699.

The same statute was construed in *State ex rel. Gilbert v. Prosecuting Attorney,* 92 Wash. 484, 159 Pac. 761, as distinctly reposing final discretion in the trial court as to whether the prosecuting attorney should be directed to institute *quo warranto* proceedings in a particular case.

Unless it plainly appears that the trial court abused its discretion in refusing to order the prosecuting attorney to file an information in such a case as the present one, this

court will affirm its action. *State ex rel. State Humane Society v. Hovey*, 159 Wash. 584, 294 Pac. 258.

Accordingly, we must consider the allegations of appellants' application for writ of mandate and decide whether the trial court in this case abused its discretion in dismissing the action.

The statutory provisions pertinent to this case are to be found in Rem. Supp. 1947, § 4693-20 through § 4693-59, inclusive. The legislative purpose in passing this act, as declared in the first section thereof (Rem. Supp. 1947, § 4693-20), is as follows:

"It is the intent and purpose of this act (a) to incorporate into a single, permanent, school district organization law all essential provisions governing the formation and establishment of new school districts, the alteration of the boundaries of existing districts, and the adjustment of the assets and liabilities of school districts when changes are made as aforesaid, and in so doing to replace the inadequate and restrictive old acts and parts of acts governing such changes and adjustments; and (b) to establish methods and procedures whereby the aforesaid changes in the school district system may be brought about by the people concerned and affected, all to the end that the territorial organization of school districts may be more readily adapted to the needs of the changing economic pattern and educational program in the state; that existing disparities among school districts in ability to provide current and capital outlay funds may be reduced and the educational opportunities of children thereby enhanced; and that a wiser use of public funds may be secured through improvement in the school district system."

The provisions of the act which particularly are involved in this case are as follows:

"The powers and duties of the County Committee shall be:

"(1) To initiate, on its own motion and whenever it deems such action advisable, proposals for changes in the organization and extent of school districts in the county; and to receive, consider, and revise, whenever in its judgment revision is advisable, proposals initiated by petition or presented to the Committee by the County Superintendent as provided for in this act; and to prepare and submit

to the State Board any of the aforesaid proposals that are found by the County Committee to provide for satisfactory improvement in the school district system of the county and the state. . . ." Rem. Supp. 1947, § 4693-32.

". . . In case the aforesaid approval by the County Committee concerns a proposal to form a new school district and/or a proposal for adjustment of bonded indebtedness, a special election of the voters residing within the territory of the proposed new district or of an established district involved in a proposal for adjustment of bonded indebtedness shall be held for the purpose of affording said voters an opportunity to approve or reject such proposals as concern or affect them. In a case involving both the question of the formation of a new district and the question of adjustment of bonded indebtedness, said questions may be submitted to the voters either in the form of a single proposition or as separate propositions, whichever to the County Superintendent seems expedient. . . ." Rem. Supp. 1947, § 4693-38.

"If a proposal for the formation of a new school district and/or for adjustment of bonded indebtedness is rejected by the voters at the aforesaid election, the County Committee may make such revisions therein as it deems advisable and submit the revised proposal or proposals to the State Board. Thereafter such revised proposal or proposals shall be subject to the provisions and procedural requirements of this act applicable to original proposals submitted to said Board." Rem. Supp. 1947, § 4693-41.

It is appellants' position that Rem. Supp 1947, § 4693-41, last quoted, is mandatory, and that there is no statutory authority for submitting alternative proposals to the electors at one time, but that only one proposal may be voted upon at an election. If that one proposal fails, then the county committee may make revisions therein and submit a revised proposal or proposals in accordance with this section of the statute (Rem. Supp. 1947, § 4693-41). Therefore, appellants say, since proposition No. II was in alternative form, the election was utterly void and, in refusing to bring an information in the nature of *quo warranto*, respondent acted arbitrarily and capriciously.

We are unable to adopt appellants' construction of the statute. Rem. Supp. 1947, § 4693-32, provides that a county

committee on school district organization has power to initiate, on its own motion, proposals for changes in the organization and extent of school districts in the county. It is authorized to submit to the state board of education any proposal which it finds to provide for satisfactory improvement in the school district system of the county and the state. The state board has power to advise the county committee in writing whether or not such proposal does provide for satisfactory improvement in the school district system.

Upon receipt and consideration by the county committee of such advice, that committee takes such action as it deems proper respecting the disposition of the proposed changes. If the county committee approves a proposal concerning the formation of a new school district, a special election of the voters residing within the territory of the proposed new district is held for the purpose of affording the voters an opportunity to approve or reject such proposal. As pointed out above, in order to become effective the proposal must receive a majority of the votes cast in each existing school district which is affected by the proposed changes in organization.

Rem. Supp. 1947, § 4693-41, on which appellants rely to sustain their assignment of error, was intended merely to make it plain that the rejection of any particular proposal by the voters would not foreclose the possibility of effecting a consolidation of other component districts or prevent the county committee from submitting a revised proposal should it determine to make revisions therein. What the county committee did in this case was to submit to the voters a proposal for the consolidation of six existing school districts and ask the voters of five of these districts whether they desired them to be consolidated *if the proposed consolidation of the six districts failed to carry.*

We have carefully examined the entire act, and we find nowhere a requirement that only one proposal concerning consolidation may be placed before the electors at a time. The language of Rem. Supp. 1947, § 4693-32, defining the

powers and duties of the committee and authorizing it "to initiate, on its own motion and whenever it deems such action advisable, proposals for changes in the organization and extent of school districts in the county," plainly includes the power to initiate the alternate propositions here involved.

Appellants' interpretation of the statute would result in the cumbersome and expensive procedure of holding two elections in place of one, which we do not believe was the intention of the legislature in enacting subsection 41, above quoted. There is nothing in this case which indicates that the result of holding two elections would have been different than the result of the one election that was held.

In this case, only one of the alternate proposals could possibly have been adopted by the voters, since, if proposition No. I had carried, proposition No. II would have, by its very terms, become ineffective. The voters could not have been confused or misled by the alternate proposal.

We do not find from the allegations of appellants' application that any such "plain case" had been made as would justify the institution of a *quo warranto* proceeding against Pierce County school district No. 403 and its school directors. Therefore, the trial court did not abuse its discretion in sustaining respondent's demurrer and dismissing the application for a writ of mandate.

The order of dismissal is hereby affirmed.

BEALS, MALLERY, and HILL, JJ., concur.

SCHWELLENBACH, J. (dissenting)—Prior to the enactment of chapter 266, p. 1104, Laws of 1947 (Rem. Supp. 1947, § 4693-20 *et seq.*), chapter 248, p. 833, Laws of 1941 (Rem. Supp. 1941, § 4709-1 [P.P.C. § 900-1], *et seq.*), was in effect. Under the 1941 act, the creation of a new school district was left to a majority of the voters within its proposed boundaries, thus permitting a larger district to "gobble up" a smaller district. This act was declared constitutional in *Wheeler School Dist. v. Hawley*, 18 Wn. (2d) 37, 137 P. (2d)

1010. To correct this obvious injustice, the legislature provided in Rem. Supp. 1947, § 4693-40:

"Whenever a special election is held, pursuant to the provisions of this act, to vote on the formation of a proposed new school district, the votes cast by the voters in each component district shall be tabulated separately and the proposition shall be considered approved only if it receives a majority of the votes cast in each separate district voting thereon. . . ."

As pointed out by the majority, Rem. Supp. 1947, § 4693-41, provides that, if such a proposal is rejected by the voters, the county committee may make such revisions as it deems advisable and, if approved by the state board, may resubmit the revised proposal to the voters.

Rem. Supp. 1947, § 4693-34, provides:

"For the purpose of forming a new school district, a petition in writing may be presented to the County Superintendent, in his capacity as secretary of the County Committee, signed either by five (5) heads of families or by a majority of the heads of families residing (a) in each whole district and in each part of a district proposed to be included in any single new district, or (b) in the territory of a proposed new district which comprises a part only of one (1) or more districts. The aforesaid petition shall state the name and number of each district involved in or affected by the proposal to form the new district and shall describe the boundaries of the proposed new district."

It is true that Rem. Supp. 1947, § 4693-32, gives the county committee power to revise proposals initiated by petition. But the power to revise does not give the committee the power to submit alternate proposals. Section 4693-39, providing for notice, states:

"The aforesaid notice shall state the purpose for which the election has been called and shall contain a description of the boundaries of *the proposed new district* and a statement of any terms of adjustment of bonded indebtedness to be voted on." (Italics mine.)

Everything in the act contemplates that the people shall vote on one proposed district. If the people reject that proposal, the county committee may then revise the proposal

and resubmit the revised proposal to the people. The procedure is clear and complete. There is nothing in the act permitting alternate proposals to be submitted. In the case under consideration, a proposal was submitted to the voters to form a new school district comprising six existing districts. That proposal did not meet the approval of the voters. Under the procedure outlined by the statute, the county committee could then have revised the original proposal and could have resubmitted another proposal to form a school district comprising five existing districts. But this was not done. Instead, the county committee, upon the advice of the state department of education, attempted to by-pass the procedure clearly set out by the legislature, and to circumvent the legislative intent by setting up an unlawful procedure of its own.

The order of dismissal should be reversed.

[1]Reported in 224 P. (2d) 338.